## HILLS *vs.* MILLER and others.

Where M. purchased land in a village, adjoining a public street, and it was at the same time agreed between him and the vendor that a triangular piece of land, belonging to the latter, on the opposite side of the street and in front of the land sold, should never be built upon, but should be deemed public property; and the vendor executed to M. a deed of the land sold, and a bond for the performance of the agreement as to the triangular piece of land, both instruments being duly proved and recorded; and H. afterwards purchased of M. the land opposite the triangular piece, after being informed by him of the privilege secured by the bond: _Held_, that H. was entitled to the benefit of the easement; and that M. could not, without his consent, be permitted to make a new arrangement with the holders of the legal estate in the triangular piece of land by which buildings should be erected thereon.

Easements are annexed to the estate of the owner of the dominant tenement, and pass to the grantee of such estate. They are also a charge upon the estate of the owner of the servient tenement, and follow such estate into the hands of those to whom the servient tenement or any part thereof is conveyed.

An easement is not destroyed by a division, or a sale of a part of the estate to which it is appurtenant. And the assignee of any part of the dominant tenement may claim the benefit of the easement, so far as it is applicable to his part of the property; provided the right, as to the several parcels, can be enjoyed without any additional charge or burthen upon the proprietor of the servient tenement.

Separate instruments, executed at the same time and relating to the same subject matter, may be construed together, and taken as different parts of the same agreement.

May 1.　　IN July, 1816, W. Bostwick was the owner of a lot of land in the village of Auburn, containing about four acres, lying on the west side of South and Hotel streets. He also owned a small triangular piece of land on the east side of Hotel street, at the junction of that and South street. This piece of land lay directly opposite or in front of the north part of the four acre lot, and was between five and six rods in length, north and south. E. Miller contracted to purchase the four acre lot; and as a part of the bargain, it was agreed that the triangular piece of land should be deemed public property, so that Bostwick, or any person holding under him, should never erect any buildings thereon, or exercise any other acts of ownership on the same, other than what any other inhabitant of that village should have a right to do. To carry that agreement in-

1832.

Hills
v.
Miller.

to effect, Bostwick conveyed the four acre lot to Miller, on the 25th of July, 1816 ; and at the same time executed to him a bond, in the penalty of $10,000, with a condition for the performance by Bostwick, his heirs, executors and administrators, of the agreement respecting the triangular piece of land, and of certain other engagements of Bostwick relative to streets, &c. Miller afterwards procured both the deed and bond to be duly proved and recorded in the office of the clerk of the county of Cayuga. In November, 1823, Miller sold the north part of the four acre lot to the complainant, except one rod in width, on the north side of the same, which he had previously conveyed to others. Before the purchase by Hills, Miller informed him that he had a writing from Bostwick which would prevent the erection of any building on the triangular piece, which was in front of that part of the four acre lot. This statement was made by way of commendation of the property which he was about to sell ; and, as the complainant alleged, it operated as an inducement to him to make the purchase. Soon after the purchase from Miller, the complainant erected a valuable dwelling house on the land purchased by him, for the private residence of himself and family, and made other improvements thereon. Directly in the rear of the triangular piece of ground, the Baptist society had erected a church, extending nearly from one street to the other, and fronting on that piece of ground, which lies open to the streets. Bostwick afterwards died, and George B. Throop and others were appointed executors of his will, with power to convey his real estate. In August, 1831, the trustees of the Baptist society wishing to enlarge their church, they applied to Miller and to the executors of Bostwick, for permission to extend their church on to the triangular piece of ground. Hills gave notice of his claim, and objected to having any part of the triangular piece occupied for that purpose. Notwithstanding this objection, Miller and the executors of Bostwick gave to the trustees of the church a quit claim deed of the triangular piece, and authorized them to extend their church twelve feet on to that piece of land. And the trustees were proceeding to build thereon accordingly, when the complainant filed his bill in this cause, and obtained an injunction. On the com-

ing in of the answers of the defendants, an application was made to dissolve the injunction.

*H. Bleecker,* for the complainant.

*W. H. Seward,* for the defendants.

THE CHANCELLOR. In this case it is evident, from the admissions in the answers, that the agreement to keep the triangular lot clear of buildings, and the agreement for the purchase of the lands conveyed by Bostwick to Miller by the deed of July, 1816, formed one entire contract, although embraced in different instruments. In *Jackson* v. *Dunsbagh,* (1 *John. Cas.* 91,) the supreme court of this state decided that separate deeds or instruments, executed at the same time, and in relation to the same subject matter, might be taken together and construed as one instrument. That decision was founded in good sense, and is supported by the authority of the case of *Taylor, ex dem. Atkyns,* v. *Horde,* (1 *Burr. Rep.* 107.) In the last case Lord Mansfield says, in relation to two separate deeds of the same date, "The internal evidence of the thing itself speaks them to be one transaction, and the same to all intents and purposes as if expressed in one instrument." In *Van Horne* v. *Crain,* (1 *Paige's Rep.* 455,) this court applied the same principle to two separate instruments executed at the same time ; by one of which a lot of land was conveyed for the purpose of a mill site, and the other one secured the right to a small piece of land upon an adjoining lot, containing a spring and run of water which were wanted for the use of the mills. In the case under consideration, the object of the bond was not to secure a personal right to Miller to have the triangle kept open, without reference to the benefit he expected to receive thereby as the owner of the lands conveyed to him by the deed. It was an easement or privilege annexed to those lands ; and if he had reconveyed the whole of the land to Bostwick, his right to recover for a breach of the condition of the bond would have become extinct. (3 *Kent's Comm.* 449. *Ersk. Princ.* 218, 227.) The right thus granted was the servitude *non officiendi luminibus vel prospectui* of

the Roman law, or the right of the owner of the lands to which it is appurtenant to restrain the owner of the servient tenement from making any erection thereon which may injure the light or prospect of the dominant tenement, or any part thereof. Rights of this description, denominated predial servitudes in the civil law, and by our law termed easements, are attached to the estate, and not to the person of the owner of the dominant tenement; and they follow that estate into the hands of the assignee thereof. So, on the other hand, they are a charge upon the estate or property of the servient tenement, and follow it into the hands of any person to whom such tenement or any part thereof is subsequently conveyed. (3 *Kent's Comm.* 420. *Code Nap. art.* 686. *Inst. Civ. Law of Spain,* 139.) As the right is annexed to the estate, for the benefit of which the easement or servitude is created, the right is not destroyed by a division of the estate to which it is appurtenant. And the owner or assignee of any portion of that estate may claim the right, so far as it is applicable to his part of the property, provided the right can be enjoyed as to the separate parcels without any additional charge or burthen to the proprietor of the servient tenement. The same principle is applied by the courts of law to covenants which run with the land. And the assignee of the whole estate in a part of the premises may recover in his own name, as such assignee, for a breach of the covenant as to that part, provided the covenant is in its nature divisible. (*Shep. Touchs.* 199. *Conan v. Kemise, Sir W. Jones' Rep.* 245.) In the language of a distinguished common law judge, "they stick so fast to the thing on which they wait, that they follow every particle of it." (*See Wilmot's Opin.* 346.) As the right to have the triangular lot kept open for the benefit of the dominant tenement, was appurtenant to every part of the premises conveyed to Miller to which that privilege could be of any possible use, Hills, by the purchase of that portion of those premises which lies directly opposite the triangle, became, in equity at least, the assignee of that privilege or easement *pro tanto.*

Miller admits, in his answer, that he informed the complainant of the right he had secured, by the bond of Bostwick,

to prevent the erection of any building on the triangular piece of land ; and that this information was given pending the negotiation for a sale to the complainant, as commending the purchase of that part of the premises which was subsequently bought by him. If the privilege was of no value to that part of the property, the mention of the fact of the bond would have been no commendation ; and if it was calculated to enhance the value of the property in the opinion of the purchaser, it would be inequitable to permit the seller to release the right he had secured by the bond, after he had by that means induced the complainant to become the buyer. If such a privilege did increase the value of the property, or render its possession more desirable, either in reference to its present or future use for village lots, the legal presumption is that the purchaser took that privilege into the account in deciding upon the expediency of taking the property at the price he concluded to give. The complainant is therefore equitably entitled to the benefit of the stipulations in the bond, so far as is necessary to secure to him the privilege, as appurtenant to that part of the premises. As against the present or any future owners of the land still held by Miller, the trustees of the Baptist church have secured the right to extend their building on to the triangle to the extent of twelve feet. But as they made that arrangement with full knowledge of the equitable claim of Hills, they cannot, without his consent, be permitted to erect a building on any part of the triangle, to the injury of his part of the adjacent property held under the deed from Bostwick to Miller.

From the answer of the defendants, and from a view of the several localities about this triangle, as exhibited by the maps, I confess it appears to me that the complainant is a little unreasonable in refusing this privilege to a respectable congregation of christians, who wish to enlarge their church by extending it only a few feet into this vacant lot ; unless, indeed, the object of this suit is to settle his rights as to the future occupation of the residue of the triangle. But the same principle, which would authorize this court to disregard his rights for this object, would render it equally proper for the court to disregard them if the object of the defendants was to erect a

" Hall of Science" or a Turkish mosque. And for aught I can know judicially, the contemplated building may be as offensive to the complainant as an edifice of either of the descriptions supposed would unquestionably be to his pious neighbors who now wish to worship there. However unreasonable I may suppose the complainant to be in this instance, if he has rights they are guaranteed to him by the constitution, and he cannot be deprived of them, even for a public benefit, except by due course of law, and upon receiving a just compensation therefor. The legislature has not deemed it expedient to authorize the taking of private property for such an object ; and until they do so, he cannot be deprived of his rights without his consent.

The application to dissolve the injunction must therefore be denied.