The Vice-Chancellor.
I have no doubt, after reading McDonald’s answer, that the lot in question was sold to him on the distinct understanding, that it was to be used for a private residence only.
Although he may not have used the word only, or said in express terms that he would not use it for any other purpose ; such was the necessary implication from what he admits to have been stated by the complainant, and assented to by himself, in connection with his own allegations.
The other defendants, however, were not parties to this part of the transaction ; and I will look at the terms of the deed to McDonald. The latter was not to use the lot in a way, or for any business which might be in any manner offensive to the occupant of the adjoining property, or that would tend to deteriorate or lessen its value ; and he was not to use it as a stone quarry.
The complainant was then preparing the adjoining property *507 for a private residence, by the erection of a cottage, and by corresponding embellishments of the lot on which it was situated. The size of the defendant’s lot, indicated that it was intended for a similar occupation. The inhibition of a stone quarry, was a sufficient indication to Richards and others, that business of that and the like nature was not to be conducted upon the land conveyed to McDonald.
In the face of these covenants in the deed, the defendants are proceeding, not to make this land a stone quarry, but to make it the outlet of a larger stone quarry, lying in its rear. They propose to “ dump” the stone from Richards & Go’s, quarries, and load them into vessels, at a wharf directly in range of the complainant’s piazza, and less than two hundred feet distant from his windows. It is scarcely possible that the congregation of men and animals, and the dust and noise, which such a business will necessarily produce, will be inoffensive to the occupants of the adjacent cottage.
Whether they ought to object is not the question. It suffices, that the complainant, owning both lots, and designing one for a retired country residence, refused to sell the other, except with such a prohibition.
Again, it is abundantly shown, that the erection of the dock, will lead to consequences still more offensive to quiet and orderly people, who may reside in the complainant’s cottage, and which may be well classed as a nuisance. It is said the natural bank of the East river affords equal, and even greater facilities for the landing of nocturnal debauchees on these lots, than will be afforded by a wharf. But the bank does not invite such landing, and the experience of the neighbors shows, that the wharves are chiefly used; either as enabling those parties to make their boats fast, or as presenting a point of attraction, and holding out inducements for them to go ashore. And the erection of a wharf, or any thing else, which, of itself innocent, invites nuisances or grossly offensive practices, and from its propinquity to the city will inevitably lead to such practices ; is in my view, clearly within the prohibitions of McDonald’s conveyance.
I do not feel warranted in dissolving the injunction upon the *508 answers and affidavits. The jurisdiction of the court is unquestionable. (Hills v. Miller, 3 Paige, 254; Trustees of Watertown v. Cowen & Bagg, 4 ibid. 510; Mann v. Stephens, 10 London Jurist Rep. 650, before Vice Ch. of England, July 28, 1846.1(a)
The motion to dissolve the injunction must be denied, with ten dollars costs.

 Now reported in 15 Simons, 377.