The Vice-Chancellor.
I have no doubt that the business of selling goods at auction, is prohibited by the terms of the covenant in. the lease, and that the lessee when he executed the lease, knew perfectly well that the lessor intended to exclude the auction business. The philological authority cited by the defendants, does not bear them out. Dr. Webster defines a li Jobber”.to be, “ a merchant who purchases goods from importers and sells to retailers.” An auctioneer does not purchase at all. He sells the goods of others for a commission.
Without wasting time upon the well established distinction between a dry goods jobber and an auctioneer, which is too clearly marked to be confounded or obliterated by affidavits, I will proceed to the only question in the cause, that of jurisdiction.
It is said, that the remedy at law for damages is adequate, and that so far from there being an irreparable injury by the continuance of the breach of this covenant, it is shown that there can be no injury at all.
I apprehend that we are not to regard this subject in the manner indicated by the latter proposition. The owner of land, selling or leasing it, may insist upon just such covenants as he pleases, touching the use and mode of enjoyment of the land ; and he is not to be defeated when the covenant is broken, by the opinion of any number of persons, that the breach occasions him no substantial injury. He has a right to define the injury for himself, and the party contracting with him must abide by the definition.
In the case of the bakery in 1 Vesey & Beames, hereafter cited, I have no doubt a great many witnesses might have been found, who would have testified, that the bakery was not an annoyance to them, or to any but over sensitive persons. And in Hills v. Miller, (3 Paige, 254,) the injury to the complainant, if tested by the opinions of witnesses, would scarcely have resulted in even nominal damages, in an action at law.
It is not necessary that the act complained of, should amount to a nuisance in law, either public or private. Nor is the court to enter into a comparison, and permit a tenant to carry on some trades as less offensive than others, where the covenant pro- *591 hi bits the former. (Per Lord Eldon, in Macher v. The Foundling Hospital, 1 Ves. &. B. 188.)
So far as the injury is concerned, it is therefore unnecessary for the complainant to establish that it will be irreparable; or on a continuing covenant, that it will be substantially injurious.
The question remains, is there an adequate remedy at law ?
In the first place, it is manifest that at law a new cause of action will arise every day that the defendants sell at auction. If the lessor avail himself of his full rights at law, he will sue daily for damages. This would lead to a multiplicity of suits, harassing to both parties, and highly obnoxious to the censure of a court of equity.
Then if the suits were brought, how is it possible to estimate the actual damages 1 A jury might enter into a wide field oí conjecture, without any certainty of coming out of it at the point of justice to the parties. The jurors might infer that the continuance of an auction business in the demised premises, would for years diminish the rent of the adjoining property, and render the premises less desirable to good tenants. But any estimate of damages on that basis, however well founded, would be wholly conjectural. A different jury might imagine that the conducting of an auction business, would enhance the value of the adjoining premises, and refuse to give any damages. And witnesses could undoubtedly be produced, whose opinions would sanction a finding in either of these modes.
I think that in a case where the parties by an express stipulation, have themselves determined that a particular trade or business conducted by the one, will be injurious or offensive to the other, and there is a continuing breach of the stipulation by the one, which this court can perceive may be highly detrimental to the other, although on the facts presented, it is not clear that there is a serious injury, and it is manifest that the extent of the injury is difficult to be ascertained or measured in damages ; it is the duty of the court by injunction, to restrain further infractions of the covenant, thereby preventing a multiplicity of petty suits at law, and at the same time protecting the rights of the complainant.
The principles to be extracted from the following authorities, *592 in my judgment, sanction this jurisdiction. I refer to Hills v. Miller, 3 Paige, 254 ; Barrow v. Richard, 8 ibid. 351; Rankin v. Huskisson, 4 Simons, 13; Barret v. Blagrave, 5 Ves. 555; (S. C., 6 Ves. 104, where the jurisdiction was virtually conceded on the motion to dissolve the injunction ;) Lord Grey de Wilton v. Saxon, 6 Ves. 106 ; Macher v. The Foundling Hospital, before cited ; 2 Story’s Eq. Jur. § 928.
As I remarked at the outset, the legal right is entirely free from doubt, so that the objection frequently made, previous to a trial of the right at law, does not exist. Therefore, the argument of Sir James Wigram, V. C., in Rigby v. Great Western Rail Road Co., is exceedingly applicable; and in this respect, his argument is not impaired by the judgment of the Chancellor of England in the same case, on dissolving the injunction. (4 Railway Cases, 175, and 1 C. P. Cooper’s Rep. Temp. Cottenham, 3.)
The motion to dissolve the injunction must he denied, with costs.