Coughlin v. Barker.

JOHANNA M. COUGHLIN *et al.*, Respondents, v. JOHN BARKER, Appellant.

### St. Louis Court of Appeals, June 2, 1891.

1. **Conveyances : EASEMENTS : BUILDING RESTRICTIONS.** If the owner of several adjoining lots conveys one of them with a restriction as to the manner of building thereon, and subsequently conveys another, and if said restriction was intended for the benefit of the last-mentioned lot, and not merely as a covenant for the benefit of such owner personally, the grantee of said last-mentioned lot and his assigns can enforce said restriction against every owner of said first-mentioned lot, acquiring title under or through said conveyance of the same, and taking with notice, actual or constructive, of the restriction.

2. ———: ———: ———. In order to render the restriction thus enforceable, it is not essential that the conveyance creating it should express the intention to make it for the benefit of the adjoining land, nor need it be reciprocal; that is, it is not necessary that there should be a similar restriction as to the adjoining land ; but the absence of such expression of intention, and even more the absence of such mutuality of restriction, is an evidentiary circumstance tending to show that the restriction was intended by the grantor of the lot subject thereto for his own benefit personally, and not for the benefit of adjoining land retained by him.

3. ——— : ——— : ———. The question, whether such an easement is a personal right. or is to be construed as appurtenant to some other estate, is generally to be determined by the fair interpretation of the grant or reservation creating it. aided if necessary by reference to the situation of the property and the surrounding circumstances.

4. ——— : ——— : ——— : BURDEN OF PROOF. When a grantee of adjoining land seeks to enforce the restriction, the burden is on him to establish the requisite intention on the part of the grantor of the conveyance by which it is created, and further the requisite notice to the owner of the lot subject to it, against whom the enforcement is sought. And *held* that the terms of the conveyance in the case at bar, when construed with reference to the extrinsic circumstances shown in evidence, did not establish the necessary intention, but only established such an intention conditionally; · that is, an intention dependent upon circumstances which never occurred.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

REVERSED AND REMANDED.

*T. K. Skinker*, for appellant.

*Boyle, Adams & McKeighan*, for respondents.

THOMPSON, J.—This is an action in the nature of a suit in equity to restrain the defendant from erecting a house within thirty feet of the lot, adjacent to a lot owned and built upon by the plaintiffs. The court granted the relief prayed for, and the defendant appeals. It appeared from the pleadings and evidence that the plaintiffs held their lot by various mesne conveyances from James M. Carpenter, and that the original deed from Carpenter contained the restriction, that no building should be erected on the lot nearer than thirty feet to the south line of Hogan avenue, which is now Morgan street. It also appeared that the defendant acquired the lot, on which he proposes to build, by various mesne conveyances from Carpenter, and that the original

deed from Carpenter contained a similar building restriction.

More fully stated, the petition alleged and the evidence showed that, on and prior to the seventeenth of February, 1875, James M. Carpenter was the owner of a parcel of land fronting one hundred and ten feet on the south side of Morgan street, of which parcel a particular description is given in the petition; that, on that day, he conveyed to defendant the east fifty feet of this parcel by a conveyance, which contained a provision that "none other than a stone-front dwelling-house should be erected on said fifty-foot lot, and that no building should be erected on it within thirty feet of Morgan street;" that on the eleventh of August, 1877, Carpenter conveyed to Charles M. Espy another portion of his one hundred and ten feet, being the thirty feet next west of the fifty feet already conveyed to the defendant; that this conveyance contained a provision, that "a building shall not be erected on the lot conveyed nearer than thirty feet from the line of Morgan street, and that the penalty in case of failure to comply shall be reversion to the grantor;" that by mesne conveyances, which are fully set out, the title to this thirty feet passed to defendant, thus showing him to be the owner of the east eighty of the one hundred and ten feet; that, on the eleventh of August, 1877, Carpenter conveyed to Moore, as trustee for Mrs. Field, the remaining thirty feet of the one hundred and ten feet by a deed, which contained a provision that no building should be erected on the lot conveyed within thirty feet of Morgan street; that by mesne conveyances, which are fully set out in the petition, plaintiff Johanna acquired the title of Moore and Mrs. Field to this lot; that plaintiff received her deed with knowledge and on the faith of the restrictions contained in the original deeds from Carpenter; that plaintiffs have erected a dwelling-house on their lot, set back thirty feet from Morgan street; that defendant has recently made an

excavation covering his entire lot, and is about to erect on it buildings fronting on Cabanne and extending northward to the south line of Morgan street; that, as soon as defendant began his excavation, plaintiffs notified him that they would insist on his observing the building line; but that defendant nevertheless was proceeding to build regardless of the line.

It also appears that the lot of defendant lies immediately east of the lot of the plaintiff. The lot lying immediately west of the lot of plaintiff was originally granted by Carpenter, but without any such building restrictions. It appeared in evidence that the city block, in which the lots of the plaintiff and the defendant are situated, originally extended from Grand avenue on the east to Vandeventer avenue on the west, having a frontage of about twenty-two hundred and forty-four feet on the south side of Hogan avenue. Of this frontage, about fifteen hundred and eighty-four feet were owned by Carpenter, about five hundred and fifty feet by one Kaime, and about one hundred and ten feet by one Hereford. The evidence was to the effect that Carpenter, desiring to make of his property a high-class residence property, and with the view of enhancing the price which he should obtain for the lots, determined to insert certain building restrictions in the deeds of lots conveyed by him, and that among these building restrictions was one, that no dwelling should be erected so that its front line should be nearer than thirty feet from the south line of Hogan avenue. It further appeared that the other proprietors of the ground, already described, did not concur with Carpenter in his scheme. It also appeared that the proprietors on the opposite side of Hogan avenue declined to face their lots upon Hogan avenue so as to make an elegant street of that avenue, but persisted in building with their houses faced toward the north, so that the rear of their houses and their back yards were presented to the front view of the dwellers on the south side of Hogan avenue,

including the plaintiffs and defendant. Then came a subsequent improvement in the form of a cable railway, which was extended through Hogan avenue, and which had the effect of introducing such noise, dirt and traffic as to make the place in question generally undesirable as residence property. In the meantime Carpenter, finding himself unable to carry out his scheme, conveyed various lots by deeds which contained no building restrictions whatever; so that out of ten other lots conveyed, aside from those acquired by the plaintiffs and the defendant, amounting in the aggregate to six hundred and one out of his fifteen hundred and eighty-four feet, seven contained no building restrictions whatever, while only three provided that no building should be erected nearer than thirty feet to the street. One of the two provided, in addition, that no stable should be erected nearer than forty feet, and one provided that no stable should be erected nearer than fifty feet from the street. Of the seven conveyances which contained no building restriction, one conveyed the lot adjoining the plaintiffs' lot on the west, and another conveyed the lot adjoining the defendant's lot on the east; but this has since become Cabanne street. Since Carpenter attempted this scheme of improvement, a new street has been put through the property north and south midway between Grand avenue and Vandeventer avenue, called Cabanne street. Carpenter himself still retains much of the land originally owned by him, and on a portion of it he had built a residence house for himself. This house lies to the east of the plaintiffs' lot, and Cabanne street and three other building lots, including that of the defendant on which he now proposes to build, intervene. Before taking any steps to erect this building which is now sought to be enjoined, the defendant, proceeding upon the conception that the building restriction in the original deed from Carpenter, under which he held, was intended for Carpenter's sole benefit, procured the consent of Carpenter that he might build up to the line

of Morgan street; and, after the commencement of this action, he obtained from Carpenter a deed releasing him from the restrictive covenant in Carpenter's original deed.

It appears very clearly from the evidence that Carpenter conceived the plan, in the year 1875, of making this a very desirable residence property; but that, in order to do so, he had to have the concurrence of several proprietors, including the Vandeventer heirs, who owned the property on the north side of Hogan avenue; that he failed to obtain the concurrence of the Vandeventer heirs, and for that reason, and for other reasons stated in his testimony, his scheme entirely fell through. His testimony shows that, by reason of the fact that many houses have been built on Vandeventer place with their fronts to the north, and their back buildings to Hogan avenue, and their stables and out-buildings abutting on Hogan avenue; by reason of the establishment of the cable railway through Hogan avenue, and from other causes, that avenue has become "disagreeable, offensive, noisy and dangerous, and is no longer a thoroughfare in general use, and is seldom used by pedestrians, or by vehicles other than the cable cars, and is now a street of very inferior character for residence purposes." His testimony shows that his purpose in inserting the restrictive covenant as to the building line in the original deeds, under which plaintiffs and the defendant respectively claim, was to retain control of the mode of building in the place, with the view of carrying out the scheme of improvement which he then contemplated, but which he was subsequently compelled to abandon for the reasons stated.

It is further to be noticed that these covenants were not reciprocal; Carpenter on his part entered into no covenant to observe a thirty-foot building line in respect of the land which he retained, and he has disregarded that line in building his own house on one of

the lots reserved by him. He still retains more than half of his original holdings in that general property.

This case has been presented by counsel on both sides in such a manner as to aid the court very materially in the investigations necessary to its decision. Its decision has been delayed with a view of obtaining enough consecutive time to make a careful examination and comparison of all the authorities presented for our consideration on both sides. These authorities, and several others, have been carefully examined and compared. They consist of decisions in equity in English and American courts on the question of the enforcement in equity of building restrictions. They are numerous, complicated in their facts, and by no means harmonious either in their reasoning or in their conclusions. We approach the decision of this case with the feeling, acquired by the careful reading and comparison of those authorities, that a judicial opinion could be constructed on either side of this controversy, well supported by authority, and apparently supported by reason. After giving to the subject careful consideration, we have come to the conclusion that the latest and best judicial opinion upon this subject, in England and in this country, is opposed to the right of the plaintiffs to enforce against the defendant the building restrictions in the deed from Carpenter, under which the defendant claims. We lay all other considerations out of view, and rest our conclusion on a fact, which is made controlling and decisive in a number of modern cases, English and American, that it does not appear from the language of the deeds, in which the original building restrictions applicable to the respective lots of the plaintiffs and the defendant were contained, when construed with reference to the extrinsic circumstances shown in evidence, that it was the intention of the parties to the deed, under which the defendant claims, to insert that restriction in the deed for the benefit of the plaintiffs' lot.

We fully concede the general rule which is invoked in behalf of the plaintiff. That rule is that, where the common grantor of two adjoining lots sells one and retains the other, and puts in the deed of the one which he sells a covenant against building in a certain way, which covenant is manifestly intended for the benefit of the lot which is retained, and he afterwards sells this lot to another the covenant passes to the assign of such lot as an appurtenance to it, or as an easement for the benefit of it, and such assign may enforce it against the owner of the other lot, whether he acquired the other lot immediately from the original vendor or through mesne conveyances, or by devise, descent, or otherwise, from him ; provided he took with notice of it, actual or constructive. *Tulk v. Moxhay*, 2 Phil. 774 ; *Mann v. Stephens*, 15 Sim. 376 ; *Whatman v. Gibson*, 9 Sim. 196 ; *Hills v. Miller*, 3 Paige, 254 ; *Barrow v. Richard*, 8 Paige, 243 ; *Browner v. Jones*, 23 Barb. 153 ; *Tallmadge v. Bank*, 26 N. Y. 105; *Linzee v. Mixer*, 101 Mass. 512 ; *Gilbert v. Peteler*, 38 N. Y. 165 ; *Atlantic Dock Co. v. Leavitt*, 54 N. Y. 35 ; *Watrous v. Allen*, 57 Mich. 362; *St. Andrews Church's Appeal*, 67 Pa. St. 512 ; *Clark v. Martin*, 49 Pa. St. 289, 297 ; *Sanborn v. Rice*, 129 Mass. 387 ; *Whitney v. Railroad*, 11 Gray ( Mass.) 359 ; *Jeffries v. Jeffries*, 119 Mass. 185 ; *Parker v. Nightengale*, 6 Allen, 341 ; *Peck v. Conway*, 119 Mass. 546 ; *McLean v. McKay*, 21 Week. Rep. 798 ; *Western v. McDermot*, L. R. 1 Eq. 499 ; s. c., affirmed, L. R. 2 Ch. 72; *Manners v. Johnson*, 1 Ch. Div. 673 ; *Coles v. Sims*, Kay, 56 ; *Child v. Douglas*, Kay, 560. Such a restriction in the land conveyed is generally construed to have been intended by the parties to the deed for the benefit of the land retained by the grantor in the deed, since in most cases it could obviously have no other purpose. Nor does it defeat this conclusion, that the purpose is not expressed in the deed, or that the deed contains no reciprocal covenant on the part of the grantor to observe a like restriction in respect of the land retained by him. In order that

the land retained by him should enjoy the benefit of the restriction imposed upon the land conveyed, it is not at all necessary that a similar restriction should be imposed upon the land retained. *Child v. Douglas*, Kay, 560. To illustrate this, let us suppose the case of the owner of two adjoining lots, desiring to build upon the one and willing to sell the other. He sells the other with a restriction for a certain building line, but he imposes upon himself no restriction to observe the same building line in respect of the lot which he retains. He builds upon his own lot to the line of the street, and he enforces the restriction against his grantee by which he is obliged to build back to the building line. It can be well seen that the grantor may intend this restriction for the mere purpose of retaining for himself a greater easement of light and view, without imposing upon himself a similar restriction.

Nor is it at all material to the right of a plaintiff to have such a restriction enforced in equity, that it should be a covenant running with the land. *Tulk v. Moxhay*, 2 Phil. Chan. 774, 777; *Keates v. Lyon*, L. R. 4 Chan. 218; *Child v. Douglas*, Kay, 560. The question, whether the covenant runs with the land, seems to be material in equity only on the question of notice; if the covenant runs with the land, then it binds the owner of the land, whether he had knowledge of it or not; for he takes no greater title than his predecessors had to convey. But, if the covenant does not run with the land, but the land is subject to what is sometimes called an "equity," and at other times a "negative easement," in favor of the adjoining land, then, in order to enforce this easement against the land, it is essential that the owner should have taken the land with notice of it. *Tulk v. Moxhay*, 2 Phil. Chan. 774.

We understand, then, that it is a principle upon which all the court unite, that the right to equitable relief in these cases depends upon the following considerations: *First.* A precedent agreement, in some form,

by which a restriction is imposed upon the lot owned or held by defendant for the benefit of the lot owned or held by the plaintiff. *Second.* In case the agreement is made by the defendant's predecessor in title, *notice* in some form to the defendant of the fact and nature of the agreement, either from the language of the title deed under which he holds, or otherwise.

It follows that in every such case the initial inquiry is, whether the building restriction sought to be enforced in equity was imposed upon the lot owned by the defendant for the benefit of the lot owned by the plaintiff. It equally follows that, if this inquiry is answered in the negative by the evidence, all other questions must be laid out of view, and equitable relief must be denied.

In determining this question it must be conceded that there is, at the outset, in every case where the owner of a piece of property divides it and sells a part of it, imposing upon his vendee a restriction as to its use, a presumption that he imposes such restriction for the benefit of the part which he retains. Yet this conclusion is by no means universal ; circumstances may exist in many cases which clearly repel it, or under which a court of equity will not be justified in saying that such was the purpose of the vendor, and the assent of his vendee. One authoritative court has gone so far as to hold that the restriction need not be contained in the form of a covenant at all, or even in the form of restrictive language in a deed of conveyance, but that it may rest in a parol agreement among the antecedent owners of the several lots, so as to bind one of the present owners, provided it clearly appears that he acquired his lot with notice of the agreement. *Tallmadge v. Bank,* 26 N. Y. 105, 107.

In every case there is a very strong argument in favor of the view that such restrictions ought to be construed as imposing what is termed a *negative easement* upon the land conveyed for the benefit of the land retained, or what is sometimes termed an *equity* in the

land retained as against the land conveyed. To the argument, that the grantor intended the restriction for his own personal benefit, and that it was a mere personal covenant, and not a covenant running with the land, it may generally be answered that the grantor could not intend it for his own personal benefit, except for his benefit *as owner of the land retained*, and that he should be benefited by it from no other circumstance than from the circumstance that it benefited the land which he retained. In dealing with this subject, equity does not concern itself with the form of the language in which the restriction is couched, but deals only with its substance. It disregards the inquiry whether it is a condition or a covenant, and enforces it when it was plainly intended by the parties that it should be for the benefit of the land held by the plaintiff.

The question, whether such an easement is a personal right, or is to be construed to be appurtenant to some other estate, is generally determined by the fair interpretation of the terms of grant or reservation creating the easement, aided if necessary by reference to the situation of the property and the surrounding circumstances. *Peck v. Conway*, 119 Mass. 546. It is important, in determining the question, to confine the evidence to the terms of the deed which contains the restriction, and to evidence of such surrounding circumstances as could readily be ascertained by a subsequent purchaser, when put upon inquiry by the terms of the deed itself. If it is the intent of the restriction in the deed to impose a servitude upon the property for the benefit of an adjoining tract of land, the conveyance ought to express that intent in the deed, though, as already stated, this is not indispensably necessary to the conclusion that such was the intent. On this point it has been observed : " In the absence of any words in the deed to this effect, or any reference to a plan showing a general scheme of improvement, the grantees took their estate without any notice, express or constructive,

that the restriction was intended for the benefit of the adjoining estate. For anything that appears, it may have been intended only for the benefit of the grantor, and for his personal convenience." *Skinner v. Shepard.* 130 Mass. 180, 181.

It is with reference to this principle that the fact that the restriction contained in the particular deed was a part of *a general plan* becomes of the greatest importance, and, in many cases, controlling. But it ought to be carefully added that the fact that there is no evidence that a particular restriction was part of a general plan does not necessarily negative the conclusion that it was intended for the benefit of a particular adjacent estate. The situation of the two parcels of land in respect of each other may be such as to render such a conclusion unavoidable, as, for instance, where a vendor sells one adjoining parcel, with an agreement not to build upon the other, in which case the conclusion is unavoidable that he annexes to the parcel sold an easement of light, air and view, in respect to the parcel retained. But where the restriction is no part of a general plan, and there is nothing in the language of the deed, when interpreted by surrounding circumstances, from which it can be fairly inferred that the restriction was intended for the benefit of any particular piece of land retained by the vendor, the covenant cannot be enforced by one who subsequently acquires from the vendor the particular piece of land, or by the vendor for the exclusive benefit of such subsequent purchaser. *Dana v. Wentworth*, 111 Mass. 291. In the present case the deed makes reference to no general plan or scheme of improvement. Its language fails to put a successor in title upon inquiry as to the existence of any such general plan or scheme. In point of fact there was no such general plan or scheme, except an inchoate and unmatured plan or scheme, in the mind of Carpenter; and, although this appears to have been a

matter of general notoriety at the time, it was not carried out, but became abortive, as already stated, and for the reasons stated. The building restriction in the deed under which the defendant claims is not even referable to any partial plan which Carpenter may have had in his mind at the time, because the five lots, the deeds of which contain such building restrictions, do not stand together in a body, but are scattered among intervening lots which contain no such restrictions.

It has been further observed that, in determining whether such a restriction was intended for the benefit of particular adjacent lots or parcels of ground, an important evidentiary circumstance is that similar restrictions were inserted in other deeds conveying such other lots or parcels, or that the deeds conveying such other lots or parcels contain reference to the restrictive clause in the particular deed. In the case before us the deed, by which Carpenter parted with the lot which the plaintiff now holds, did not contain such a restriction, and this is an evidentiary circumstance in their favor. But it does not appear that it made any reference to any similar building restrictions in any other deed, or that the deed under which the defendant claims, or any other deed of Carpenter containing similar restrictions, referred to the fact that similar restrictions had been imposed upon the grantees of other parcels. The deed, therefore, fails to afford intrinsic evidence of a general scheme of improvement, establishing a common building line, and the fact that grants were made of intervening parcels by deeds containing no such restrictions negatives the conclusion that there was, at the time when the deed, under which the defendant claims, was made by Carpenter, such an established or matured scheme. Of course, we do not wish to be understood as holding that, where the manifest intention of the parties to a deed is to grant a negative easement for the benefit of land retained by the grantor, it is necessary that this purpose should be

expressed in the deed. The contrary has been held in authoritative cases. *Mann v. Stephens,* 15 Sim. 376; *Patching v. Dubbins,* Kay, 1; *McLean v. McKay,* 21 Week. Rep. 798. We merely hold that the omission from the deed of such an expression is an evidentiary circumstance, to be taken into consideration in proceedings of this kind.

It is further to be kept in mind that in this case there was no mutuality of covenant. Carpenter sold to the defendant's predecessor in title a thirty-foot lot, containing this restriction as to the building line, but he imposed no such restriction on the lots that he retained; nor did he impose such restrictions on a majority of the lots that he subsequently granted to others. This in itself is a strong evidentiary circumstance tending to the conclusion that the purpose in imposing the restriction was intended to be personal to himself. Where the covenants are mutual, there is no difficulty whatever in dealing with this question. Thus, where the owner of a particular piece of land, on which a row of houses is intended to be built, executes a deed, reciting that it has been laid out and is intended to be dealt with in a particular manner, and declares that it shall be a general and indispensable condition of the sale of all or of any part of the land that the several proprietors for the time being shall observe and abide by the several restrictions and stipulations therein contained, and that he, himself, will at all times observe the like restrictions and stipulations; and these restrictions and stipulations are also enforced by mutual covenants, although the question may afterwards arise between subsequent purchasers of different portions of the land, one of the subsequent lot-owners will be bound, and another will be entitled to enforce the covenant. *Whatman v. Gibson,* 9 Sim. 196. Of course, we do not wish to be understood as intimating that mutuality of covenant is at all necessary to enable the owner of the land, for whose benefit the restrictive covenant, in

respect to the other lot, was made, to have the covenant enforced in equity. The rule is quite clearly settled to the contrary, and without any difference of opinion so far as we know. *Hall v. Wessler*, 7 Mo. App. 56. On this subject it was observed by Sir W. PAIGE WOOD ( afterward Lord HATHERLY ) : "I have felt some difficulty throughout in seeing how reciprocity could have anything to do with the question. Where a part of the remaining property of the vendor has been sold to another person, who must be said to have bought the benefit of the former purchaser's covenant, and more especially when the subsequent purchaser has entered into a similar covenant on his own part, he must be said to have done this in consideration of those benefits ; and, even whether he actually knew or was ignorant that this covenant was, in fact, inserted in the other purchaser's deed, because he must be taken to have bought all the rights connected with this portion of the land." *Child v. Douglas*, Kay, 560, 569, 571.

In Massachusetts, where the equitable grounds upon which the plaintiffs predicate their right to relief have been expounded and enforced as broadly as in any other jurisdiction, several decisions have been rendered which illustrate and enforce the foregoing conclusions, and which show that the plaintiffs are not entitled to relief in this case. In one of these cases it appeared that D., being the owner of several parcels of land, which were described upon a plan which had been recorded in the registry of deeds, conveyed to the defendants in fee simple a certain parcel, numbered 3 on the plan, with the building thereon, by metes and bounds and subject to the following restriction, "that no out-buildings or sheds shall ever be erected westwardly of the main line, of a greater height than those now standing thereon." Thereafter D. conveyed the parcel or lot, numbered 4 on the plan, to R., with all rights, easements, privileges and appurtenances thereupon belonging ; and the lot afterwards came, through mesne

conveyances, to the plaintiff. It was held that the plaintiff was not entitled to the aid of equity to enforce against the defendant the restriction contained in the deed of D. to the defendant. The court speaking through BIGELOW, C. J., said: "The infirmity of the plaintiff's case is that there is nothing from which the court can infer that the restriction in the deed from Downing was inserted for the benefit of the estate now owned by the plaintiff.

In another case in the same state it appeared that, in 1834, the plaintiff conveyed to one Nudd a certain parcel of land, upon condition, "that the grantee, nor his heirs or assigns will not at any time build, or permit to be built, any building upon said lot, nearer to either of said streets (the boundary streets) than eight feet," etc. Afterwards this parcel was divided into three lots, each fronting on Auburn street. Long afterwards, Mrs. Niles became owner, by mesne conveyances, of one of these lots, by a deed of release which contained the proviso, "that no building shall ever be erected, or suffered to stand upon the afore-described piece of land, or any parcel thereof, contrary to the provisions of said condition; but a breach of this prohibition shall in no case work a forfeiture, but shall be conclusively deemed a nuisance, for which I, my heirs or devisees shall be entitled to enter and abate without process of law, and shall likewise be entitled to damages against the party or parties offending, but against no others, and also to any and all other remedies at law or in equity." This deed was recorded. Still later Whitney became possessed, by mesne conveyances, of another of the three lots, and conveyed it to the defendant. At the time of the conveyance to Mrs. Niles, the then owner of the defendant's lot did not know of the first deed spoken of, and neither he nor any of those succeeding him in the ownership of the lot had ever consented thereto. It was held that the plaintiff, the original convenantee, could not maintain a suit in

equity to restrain the defendant from building on his lot within eight feet of Auburn street. In giving the opinion of the court, Mr. Justice GRAY said: "There is nothing in the case to show that the restriction in the deed from the plaintiff to Nudd was part of a general plan for the benefit of the land thereby granted and other estates on the same street, or was inserted in the plaintiff's deed for the benefit of the grantee or his assigns, or was repeated in any grant or covenant executed by him or them, or either of them. Under these circumstances, a purchaser from Nudd of part of the land so granted to him has no more right in equity than at law to enforce the restriction against the purchaser of another part of the same land." *Dana v. Wentworth*, 111 Mass. 291, 293.

In another case in the same state it appeared that the owner of the land, lying on both sides of a street, granted the portion on one side which bordered upon the ocean, subject to the condition that the same should be used only for bathing and boating from the beach, and that only low bathing houses should be built thereon. It did not appear that he then intended that the land so granted should be subsequently divided and held by different owners. This, however, was done, and deeds of conveyance were made subject to the condition. The purchaser of one end of the land also purchased from a stranger a lot opposite thereto, on the other side of the street. It was held that such purchaser could not maintain a bill in equity against the purchaser of another portion of the land to restrain the latter from violating the condition. The court proceeded upon the view stated in the preceding paragraph; and in the course of its opinion, given by BIGELOW, C. J., it is also said: "There is nothing in the case before us which in any degree tends to show that there was any intent on the part of the grantor and grantee in the original deed, by which the condition was annexed to that grant of the land now owned by the

parties to this suit, to give any other or different effect
to the condition than that which would result from it
at common law. It does not appear that the original
grantor had in contemplation the division of the land
into separate lots or parcels which would be held by
different owners, or that the condition was inserted in
the grant for the purpose of creating a restriction on
the use of the land as between subsequent grantees of
different lots or parcels thereof." *Jewell v. Lee*, 14
Allen, 145, 150. This case differs from the one before
us in this: There the owner had no intention, at the
time of the deed, to divide up the land and parcel it out
to different owners upon a general scheme; while here
there was such an intention, which proved abortive,
because the concurrence of other land-owners in the
scheme could not be secured.

Another case in Massachusetts, where equitable
relief was denied, was considerably like the present case
in several of its features. It appeared that J. S., the
owner of a tract of land, laid it out in lots, and recorded
in the registry of deeds a plan, showing the streets and
lots with their dimensions. On the north side of one
of the streets were five lots, numbered consecutively
from six to ten, and on the south side a large lot. J. S.
conveyed this large lot without restriction, and built a
house on lot 10, standing twenty feet back from the
street. He then conveyed lot 8 and part of lot
7 to the plaintiff's grantor by deeds containing a
provision that, for fifteen years, no building should
be placed on the granted premises within twenty feet
of the street; that no trade offensive to dwelling-houses
in that neighborhood should be carried on; and that a
violation of either of these restrictions should not work
a forfeiture, but that J. S., his heirs or devisees might
enter upon the land and remove anything violating the
restrictions. J. S. afterwards conveyed the rest of lot
7 and also lot 6 to the defendant, by deeds containing
the same provision. The court held that the plaintiff

could not maintain a bill in equity to restrain the defendant from erecting a building on lot 6 within twenty feet of the street. It was not claimed that, in regard to any of the lots, there was any written covenant by the grantor, and it did not appear that there was any express stipulation or direct assurance on his part that any person who should purchase a lot on the north side of the street should have the benefit of a restriction, binding all the other purchasers, to leave an open space between their dwelling-houses, and the street. The court, speaking through AMES, J., said : "The only ground upon which the plaintiff can rest her claim that the restriction in question was intended to operate for the benefit of all the purchasers, and to establish a general plan of building, by which each one would acquire a right in the nature of an easement in the land purchased by the others, is to be found in the fact, that, in his transactions with two separate and independent purchasers, the grantor conveyed a portion of the land in each case, subject to the terms and conditions set forth in the bill of complaint. It is true that, of these conditions, the one prohibiting the prosecution of any offensive trade or manufacture upon the premises, or the using of them for the keeping of swine, or of a livery-stable, would in practice be beneficial to the neighborhood generally. But it is to be remembered that the grantor had himself built a dwelling-house in that immediate neighborhood, and the provision which he made for the prevention of nuisances may have been intended for the benefit of that particular house. * * * No such purpose can be gathered from the plan, or from the situation of the property with reference to other land of the grantor. It purports to be a condition imposed by the grantor, and the deed points out the mode in which he, his heirs or devisees may enforce it. Neither of the deeds, under which these parties respectively claim, purports to give to the grantee any such right against any other grantee. For aught

that appears, the condition may have been intended for the benefit of the grantor or his family, as long as they continued to own the dwelling-house. The burden of proof is upon the plaintiff, if she insists upon giving to that condition any wider application, and this burden we do not find that she has sustained." *Sharp v. Ropes*, 110 Mass. 381, 385.

In a modern case in the English chancery division, the court denied relief, on a similar line of thought upon the following state of facts : The owner of an estate granted a lease of a plot of ground to A., who covenanted that he, his executors, administrators and assigns would not, during the term, do on the premises anything which should be an annoyance to the neighborhood or to the lessor or his tenants, or which should diminish the value of the adjoining property, and that he would not build, or allow to be built, on the ground any building or erection, without first submitting the plans to the lessor and obtaining his approval. Some years later the landlord granted a lease of an adjoining plot to B., who entered into a similar restrictive covenant. Within twenty years, A. commenced, with the approval of the lessor, to build upon his ground so as to darken the windows of B.'s house. B., thereupon, brought a bill in equity to restrain A. from erecting, and also to restrain the lessor from approving, the building which A. was about to erect. The court held that B. was not entitled to relief, either on the principle that the lessor could not derogate from his grant, or on the ground that the restrictive covenants in A.'s lease inured to the benefit of B. *Master v. Hansard*, 4 Chan. Div. 718. The case of *Schreiber v. Creed*, 10 Sim. 9, supports to some extent the same conclusion.

There is another ground upon which the courts of equity, both in England and America, have denied relief in these cases. It is that equity will not lend its aid where the covenants were inserted in pursuance of a scheme of improvement, *which has afterwards been*

*abandoned*, or where the circumstances surrounding the property have so entirely changed in other respects as to render the enforcement of the covenant *inequitable*—in other words, so that its enforcement would entail greater injustice than it would remedy. This principle has been recognized and acted upon in these cases by the English courts of equity ever since the decision of Lord Eldon in the celebrated case of the *Duke of Bedford v. Trustees of British Museum*, 2 Milne & K. 552. See, for instance, the recent case of *Sayers v. Collyer*, 24 Ch. Div. 180. These cases have generally denied such relief *to the original covenantee*, on the ground that he has changed the condition of the property by his affirmative action, by his consent, or by his neglect, so as to render it inequitable for *him* to enforce the covenant ; in other words, he is regarded as *estopped* from enforcing it. Such was the case of the *Duke of Bedford v. Trustees of British Museum*, *supra*. The theory of the court is stated by Lord Eldon in a subsequent case : ''Every relaxation which the plaintiff has permitted in allowing houses to be built in violation of the covenant amounts *pro tanto* to a dispensation of the obligation intended to be contracted by it.'' *Roper v. Williams*, Turn. & Russ. 18, 22.

Of this the most striking illustration which has come under our notice is a decision of the court of appeals of Kentucky, which, upon some of its facts, is very much like the case now under consideration. In that case it appeared that a man, owning certain unimproved city property, laid it out on a plan by which it was intended to be sold for residences only. He sold and conveyed several of the lots to A. with a clause in the deed containing the restriction against business houses, manufacturies or anything other than dwelling-houses, being erected upon the property. He afterwards sold other lots to different persons, without any restrictions whatever, and he made mortgages of the rest

of the property without any restrictions therein. Thereafter A. conveyed the lots, which he had thus purchased, to a street-railway company, and they commenced the erection thereon of a stable for their horses. It was held that the *original vendor* was not entitled to have the railway company enjoined from erecting and maintaining their stable, since the evidence showed an abandonment on his part of the original purpose in respect to the land which induced him to insert the above restriction, and since no vendee of his was complaining.

It must be conceded that this principle can have no application to a case, where it is clear that the original vendor or lessor has inserted the covenant in the deed for the benefit of adjacent land retained by him, which he has afterwards sold, and which has subsequently come into the hands of the party seeking to enforce the covenant; because it is not competent for him to derogate from the rights which he himself has granted. *Child v. Douglas*, Kay, 560, 572. Yet, where it is not clear that such was his intention, and where the circumstances are not such as to make it clear that a subsequent purchaser would so understand it, the principle as already seen has been applied as against the vendees of the original covenantee, no less than against the original covenantee himself.

An illustration of the fact that equity will not enforce such a covenant, where the circumstances have so changed as to defeat entirely the reasons upon which it was originally founded, without any reference to the fault of the original covenantee, is found in a decision of the court of appeals of New York, where the trustees of Columbia College had conveyed property by deeds, reciting the object which the parties to the conveyance had in view to be " to provide for the better improvement of the said lands, and to secure their permanent value;" and the parties mutually covenanted for

themselves, their heirs and assigns, that only dwelling-houses should be erected upon their respective premises, and that neither would permit or carry on any stable, schoolhouse, engine-house, tenement or community house, or any kind of manufactory, trade or business, on any part of said lands; but it appeared that, at the time of the hearing of the suit in equity to enforce the covenant, the neighborhood had become so changed by the growth and extension of business houses, and by the erection of an elevated railroad running opposite the second-story windows of the house, as to render it undesirable for residence purposes, but, nevertheless, valuable for business purposes. It was held that the entire purpose for which the covenant, was inserted in the deed having failed, equity would not decree its enforcement, but would leave the plaintiffs to their remedy at law. *Trustees of Columbia College v. Thächer*, 87 N. Y. 311.

Unless we misunderstand and misapply these principles, the plaintiffs, in order to succeed, must make it appear to our satisfaction that the covenant in the deed from Carpenter, under which the defendant claims, was inserted in the deed for the purpose of creating a negative easement in favor of the ground which includes plaintiffs' particular lot, and that the circumstances were such as to impart to the defendant notice, from the terms of the deed, that such was its purpose. We do not think that this sufficiently appears. The language of the deed does not disclose any such purpose. The other deeds made by Carpenter do not disclose any general and consistent purpose to restrict the grantees to a common building line, because, as already stated, a majority of them contain no such restriction at all. The conclusion, that in inserting the restriction under which the defendant claims, it was the purpose of Carpenter to impose upon the property a servitude for the benefit of the particular lot which the plaintiff subsequently acquired, is also negatived by the further fact,

that Carpenter inserted no such restriction in the deed by which he conveyed the lot immediately west of the plaintiff's lot; nor in the deed by which he conveyed the second lot east of the plaintiff's lot,—that is to say the lot immediately adjoining the defendant's lot on the east. Carpenter undoubtedly intended to impose this restriction upon the use of the defendant's lot for the general benefit of the land retained by him in that place. But he intended it *sub modo*, so to speak; he intended it, provided he could carry out his scheme of improvement, and he did not intend it in contemplation of what subsequently happened.

We do not, of course, shut our eyes to the fact, that for the defendant to build in disregard of the restriction in the two deeds under which he claims will work considerable damage to the plaintiffs. The lot-owner immediately on the west side of the plaintiffs is at liberty to build out to the line of the street, and so is the lot-owner immediately on the east side of the defendant across Cabanne street. There thus lies east of the plaintiffs a frontage of one hundred and forty feet extending to a lot retained by Carpenter, and on which Carpenter has built out beyond the building line, in which space of one hundred and forty feet the plaintiffs would have this easement of view to the east, if we were to grant the relief for which they pray. If this relief is not granted, their house is liable to be left in a pocket, so to speak, but thirty feet wide, the width of their own lot, in case the owner flanking them on the west should take the notion of building out to the line of the street, he being under no covenant not to do so. But a glance at the map, in connection with the evidence, will show that the tracts of ground subjected to this building restriction break out in three places, so to speak,—one (that in question) on the west side of Cabanne street, and the other two at a distance from this one and from each other on the east side of that street,—thus showing an entire absence of a consummated, consistent plan.

Then, as to the facts disclosed by the plaintiffs' evidence, the truth of which we cannot doubt, that, when they purchased their property, they were informed by the real-estate agent through whom it was sold to them that there was a thirty-foot building line established there, we must say that the state of facts above set out shows that the agent was in error in giving to the plaintiffs that information. There was no such *general* building line; there was only the restriction in regard to the two lots immediately to the east,—of fifty and thirty feet respectively, which composed the aggregate lot on which the defendant proposes to build. If, therefore, the plaintiffs, as we must hold to have been the case, purchased on the faith of there being a general building line, they are in the unfortunate situation of having purchased on erroneous information.

There is another view: The evidence makes it strongly appear that the principal damage, which the plaintiffs will suffer, grows out of the peculiar manner in which they have built their house. They have built it back of the supposed thirty-foot building line, and have inserted a side door in it, on the east side, about the middle of it, according to the manner in which many houses are built in St. Louis; and so that, if the defendant continues to build his house as he has begun it, the side door of the plaintiffs will look into the rear door of the defendant. This is unfortunate for the plaintiffs, but our decision has some compensation for them; they also will be at liberty to extend their house nearer to the street at any time when they shall see fit to do so.

We do not shut our eyes to the fact, that the plaintiffs' position is very strong and very logical. It is simply this: That in imposing this restriction upon the lot, which afterwards passed into the ownership of the defendant, Carpenter must have intended to impose it for the benefit of the property immediately adjoining, since it could have no other object than to afford an easement of light, air and view to such property, and

that, having imposed these restrictions for the bene-fit of such other property, those who subsequently acquired that property have a right to claim the easement, notwithstanding any subsequent changes which may have taken place in the neighborhood, notwithstanding any subsequent failure in the plans of Carpenter, and notwithstanding the fact that he did not see fit to impose it upon himself in respect of the property which he retained, or to impose it on all of his grantees. It is undeniably logical, that no sub-sequent change of circumstances, and especially no sub-sequent release by Carpenter, would derogate from the grant of such an easement, if that was the character of the grant. But we proceed upon the view that this was not the character of the grant; that the restriction was not intended for the benefit of any particular lot, but was conceived as a part of a general scheme of improve-ment, and was not intended to be operative unless that scheme should be carried out.

Upon the whole we are, therefore, of the opinion, though not without considerable doubt and hesitancy, that we must reverse the judgment of the circuit court, and remand the cause, with directions to enter judg-ment for the defendant, dissolving the injunction and dismissing the suit. It is so ordered. All the judges concur.