Denio, J.
 

 It is the most favorable position for the defendants to assume that the lease of 1703 inured,- according, to
 
 *278
 
 its terms and obvious intention, to the use of the Shinnecock Indians in perpetuity, or at least during the long term granted, as though they bore a corporate character which would authorize them to take and hold land as a tribe; and I shall accordingly so assume. It might be difficult, however, to maintain that they possessed such a capacity in respect to private grants and conveyances, if the case turned upon that question. The controversy must therefore depend upon the proper construction of the instrument given in evidence, and its legal effect. It contains general words of grant and demise of the whole of the premises contained within the boundaries “specified; but these are greatly qualified by what follows. The meadows and marshes were excepted; and they were proper subjects of an exception, according to the technical rules referred to by the defendants’ counsel; and so with the timber, stone and highways. It is objected that the “ grass, herbage, feeding and pasturage,” which are also excepted in terms, being the annual profits of the land, cannot be excepted or reserved to the grantees, such reservation being, as it is argued, repugnant to the grant; and, moreover, that being things not in existence at the time of the grant, they cannot be the subject of an exception. But I am of opinion that the restriction, whether it be called an exception or a reservation, is an effectual qualification of the grant, by which the lessees, by accepting the deed, are bound. The right of the grantors, and those whom they represent, to enter with their cattle to depasture the land—assuming the general title to pass to the lessees—was such a servitude or easement as may be legally created by the acceptance of a deed reserving such rights.
 
 (Hills
 
 v. Miller, 3 Paige, 254;
 
 Child
 
 v. Chappell, 5 Seld., 246, 253.) Besides servitudes, or easements as they are now called, may. be established by prescription ; and it was shown that the rights which the. deed professes to create in favor of the lessors, had been continually exercised by the inhabitants of Southampton, for a great length of time. The evidence renders it probable that they had been from the time of the execution of the lease. ,
 

 Enough has been said to show that the. plaintiff, as an
 
 *279
 
 inhabitant of Southampton, had a light tó turn his sheep upon the premises, and that he was not a trespasser in so doing. But, consistently with this privilege, the Indians had a right to plow and plant the arable parts of the land, provided they threw down their- inclosures in the autumn, and suffered them thus to remain until spring. The respective rights of the parties then were as follows: the plaintiff had the general right of pasturage upon the whole of the premises during the whole year, subject to the defendants’ right to inclose and cultivate the arable portions during seven months. These arable parts were the hill sides, which seem to have been interspersed among the meadows, marshes and pasture lands. It was for the lessees to elect whether they would cultivate, -and upon what portion they would thus exercise their rights. This relative situation of the parties, points out very plainly who were tj> be° at the trouble and expense of Securing the crop against the intrusions of the animals, whose owners had a general right to turn them upon the premises. The party whose right it was to select the parts he wanted cultivated, was the one whose duty it was to protect the portion so selected from the intrusion of the animals, who, until such selection, had a general right to be upon every portion of the premises. The case has no analogy to that of persons owning adjoining lands, where by the common law each proprietor was obliged to keep his domestic animals on his own land, and where, by the statute, the fences are to be divided. The provision by which the Indians were allowed to take fencing timber, and that by which they were forbidden to maintain inclosures during a part of the year, confirms the view I have taken of the case. I am satisfied that the Supreme Court was right in holding that it was for the lessees to secure the portions of land which they chose to cultivate, against the cattle of the lessors lawfully being upon the remainder of the premises, and that the taking of the plaintiff’s sheep, as a distress, cannot be sustained. The judgment must be affirmed.
 

 All the judges concurring,
 

 Judgment affirmed. '