ELIJAH R. SCHOONMAKER, Respondent, *v.* WILLIAM HOYT and MARK W. HOYT, Appellants.

| 72 407 |
| 148a 425 |

*Conveyance of land with growing hemlock trees thereon — contract reserving the hemlock bark — right to the bark of an assignee of the contract as against a subsequent grantee, from the party reserving the bark, of his interest in it.*

Land on which hemlock trees are standing was conveyed by the owner in accordance with a contract by which he reserved to himself all the hemlock bark upon the premises, together with the right of ingress and egress for the purpose of peeling and removing the same, the effect of the conveyance being such that the trees would have passed thereby as part of the realty were it not for the severance created by the reservation in the contract.

*Held,* as it appeared that the parties intended the right to the bark to be a reservation as distinguished from an exception from the conveyance, that the right and title of the grantor to the bark was to be deemed to arise from the contract and would, therefore, pass by an assignment by him of his interest in the contract, as against a subsequent conveyance by him of his interest in the bark on the land to one having actual knowledge as well as constructive notice of the contract containing the reservation.

APPEAL by the defendants, William Hoyt and Mark W. Hoyt, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of Cattaraugus county on the 24th day of February, 1893, upon the report of a referee.

*Reynolds & Brown,* for the appellants.

*Wm. H. Henderson,* for the respondent.

HAIGHT, J.:

This action was brought to recover the value of a quantity of hemlock bark which the defendants had peeled and removed from

the trees on which it grew. The defense was that the defendants were the owners of the bark.

It appears that on the 8th day of December, 1869, one Job Moses was the owner in fee of certain lands in Cattaraugus county known and described on a certain map made by Joseph Ellicott, surveyor of the Holland Land Company, as lots numbers 71, 60, 68, 66, 55 and 19, on which were growing a large number of hemlock trees. It further appears that Arthur Palen, Edward Palen and Gilbert W. Palen were the owners of other lands in said county known as lots numbers 2, 4, 10 and 72; that on that date Moses entered into an agreement with the Palens by which he sold to them the hemlock bark growing upon the lands owned by him, and the Palens, in payment therefor, agreed to convey to him lands owned by them, they reserving, however, to themselves, their heirs and assigns, all the hemlock bark upon the premises to be conveyed by them, together with the right of ingress and egress for the purpose of peeling and removing the same. Thereafter, and on the 10th day of January, 1873, the Palens conveyed their lands to Moses pursuant to the requirements of their contract. Gilbert W. Palen having died, James F. Palen succeeded to his interest, and thereafter, and on the 1st day of February, 1873, Arthur, Edward and James F. Palen executed an assignment of their interest in the contract to Jackson S. Schultz of the city of New York, for the purpose of indemnifying and securing him for becoming surety with them upon a bond to the amount of $30,000, the material portion of which assignment is as follows: "Now, therefore, we, the undersigned, Arthur Palen, Edward Palen and James F. Palen, for the purpose of indemnifying and securing the said Jackson S. Schultz from any and all losses, costs, damages and expenses by reason of his execution of said bond as aforesaid, and for a valuable consideration passing to us in addition to said execution of said bond, do hereby assign and transfer unto him, the said Jackson S. Schultz, all of our right, title and interest in and to the following described contracts, to wit: (Here follows the description of a contract not involved in this litigation.) One contract between Job Moses of the first part and A., E. and G. W. Palen of the second part, dated December 8th, 1869, for the sale and removal from the lands therein described of the hemlock bark thereon and which last-mentioned contract is recorded in the Cat-

taraugus county clerk's office in volume 6 of Miscellaneous Records, at page 247."

An action was commenced against Schultz upon the bond executed by him as surety for the Palens and a judgment was entered thereon on the 18th of December, 1874, for the sum of $16,700.77. On January 4, 1875, he commenced an action against the Palens, and claimed a judgment for the foreclosure of the contracts mentioned, and asked that the Palens should be foreclosed of all their right, title and interest in and to the contracts assigned to him, and that the same should be sold under the direction of the court; that such proceedings were had in the action that on the 1st day of February, 1875, judgment of foreclosure and sale in the action was entered for the relief demanded in the complaint, and it is conceded that in that action the court had jurisdiction of the persons and the subject-matter, and that judgment was duly given. A referee was then appointed to sell the interests of the Palens in the contract, and he subsequently sold the same at public sale to Schultz for the sum of $2,000, and thereupon, in pursuance of the judgment, he executed and delivered to him a conveyance thereof.

The defendants, through several mesne conveyances and assignments, acquired the interest of Schultz in the bark in question, and have entered upon the premises and cut and peeled the same. Thereafter, and on the 3d of June, 1886, the Palens executed and delivered to the plaintiff a conveyance of all their interest in the hemlock bark on lots 2, 4, 10 and 72 with all rights of action against any parties for cutting, removing or interfering with the same.

It will be observed that under the provisions of the contract with Moses the Palens became the owners of all of the hemlock bark growing upon his lands, and in payment therefor they became bound to deed to him the lands owned by them and described as lots 2, 4, 10 and 72, and that this requirement of the contract was subsequently carried out by their executing and delivering deeds pursuant to that provision. At the time of executing and delivering the deeds the trees were still standing, and would be considered a part of the realty were it not for the contract, but under the contract the trees were deemed severed from the soil, and, consequently, became personal property. Under the contract the bark growing upon the

trees was reserved by the Palens. The bark consequently remained their property, and did not pass to Moses under the deeds. True, the Palens were the owners of the bark upon lots 2, 4, 10 and 72 before the contract was executed, and they remained the owners after its execution, but under the deeds the bark would have passed to Moses had it not been for the reservation in the contract, so that it is apparent that the Palens' title to the bark is dependent upon and can be maintained only through the contract.

This contract, as we have seen, was assigned to Schultz. In assigning to Schultz, they in terms transferred to him all of their right, title and interest in and to the contract, so that if they held the bark by virtue of it, their title must of necessity have passed to Schultz. This assignment was made to indemnify Schultz for a liability that he had incurred in their behalf, which he subsequently was obliged to pay. A suit was then instituted for the foreclosure and sale of the Palens' remaining interest in the contract, and judgment was entered therein in favor of Schultz for the relief demanded, and all of their interest in the contract was sold at public sale and bid in by him, and it appears to us that the title to the bark on the lots in question passed to him under such sale.

The contention of the plaintiff is that the Palens did not obtain title to the bark upon the lots in question by virtue of the contract, and that, therefore, their title did not pass to Schultz upon the assignment of the contract, or upon the sale thereof under the foreclosure judgment. If this contention should be sustained, what would become of the plaintiff's title? For, as we have seen, the trees were standing uncut at the time of the conveyance by deed to Moses, and under the deed Moses would become the owner of the bark upon the growing trees. The plaintiff has not acquired Moses' title, but stands upon the conveyance obtained from the Palens, and, as we have shown, Palen's title can be established only through the contract.

Again, it is claimed that the word " reserves," appearing in the contract, should be construed to mean " excepts." That instead of reserving the bark from the lands to be conveyed, it was intended to except the bark from the conveyance. We shall not enter upon an extended discussion of the technical difference in the meaning of the two words further than to state that an exception appearing in

a deed, as ordinarily understood, saves from the operation of the deed some part of the lands described, whilst a reservation is not ordinarily understood to refer to the land itself, but relates to some right, property or interest connected therewith, such as right of way over, the collection of rents, the gathering of a crop or the cutting of the timber upon it. (*Craig* v. *Wells*, 11 N. Y. 315–321.)

But whether the right to cut and peel the bark is to be considered as an exception or a reservation must depend upon the manifest intention of the parties. (*Rose* v. *Bunn*, 21 N. Y. 275–278.)

It appears to us that, under the circumstances disclosed in this case, there can be no doubt as to the intentions of the parties. Schultz had become surety for the Palens upon the $30,000 bond. Accompanying this bond was a mortgage upon real estate, covering a tract of land in Cattaraugus county. The parties wanted the premises to be released from the lien of the mortgage. In permitting this Schultz required indemnity. The amount of the liability was large. The indemnity offered was an assignment of the interest of the Palens in this and another contract. They in terms assigned all of their title and interest. They claimed, and were the owners of, all of the hemlock bark growing upon the lands owned by Moses, as well as that conveyed by them to Moses, and evidently intended that it all should be transferred to Schultz to indemnify him. Some comment has been made upon the descriptions of the contract in the assignment. As we have seen, they assigned all of their right, title and interest " in and to the following described contract, to wit," and then for the purpose of describing the contract so assigned they state, " One contract between Job Moses of the first part and A., E. and G. W. Palen of the second part, dated December 8th, 1869, for the sale and removal from the lands therein described, of the hemlock bark thereon."

It is claimed that the words " for the sale " only referred to the bark that was purchased by the Palens upon the lands of Moses, but this phrase must be read in connection with that which follows, " and removal from the lands therein described." All of the lands are described in the contract. Those of Moses and those conveyed by the Palens to Moses.

Again, it appears that this assignment was made in 1873, thirteen years before the Palens transferred their interest to the plaintiff.

During many of these years the defendants were engaged in cutting and removing the bark on these lots. It appears that this was done with the knowledge of the Palens as well as that of the plaintiff, and no objection appears to have been made until about the time of the transfer to the plaintiff. It is, therefore, quite apparent that the Palens not only intended to transfer their interest in the bark to Schultz, but that they understood and supposed that they had in fact done so.

The plaintiff was one of the subscribing witnesses to the assignment. He, therefore, had actual knowledge of its existence as well as constructive notice through its record.

. We think the judgment should be reversed and a new trial ordered, costs to abide the event.

DWIGHT, P. J., and LEWIS, J., concurred.

Judgment appealed from reversed and a new trial granted, with costs to abide the event.