JANE CATHARINE LATTIMER, Respondent, v. CHARLES F. LIVERMORE, Appellant.

Where a deed of a city lot, in which the grantor and grantee join, contains a covenant on the part of the latter that neither he nor any person claiming under or through the conveyance shall build upon the lot any building of more than a specified depth, which covenant is declared continuing and for the benefit of owners of other lots then owned by the grantor, so that said lots may have "freedom of air, light and vision," one to whom one of the other lots has been conveyed by deed granting the easements, covenants, privileges, etc., belonging thereto, may enforce said covenant so long as it is of any value to his lot.

The right to enforce such covenant is not affected by acquiescence in the violation of another and distinct covenant, as to the use of the lot, contained in the deed.

A notice of an intention to violate the covenant given by one succeeding to the title of the grantee to an owner of a lot for whose benefit the covenant was made, is sufficient to authorize the interference of a court of equity to restrain such violation; and if the intended violation is of a character to be entirely harmless, it devolves upon the defendant to show it.

The fact that the owner of another lot, who acquired title under a deed containing the same covenant, has violated it, is no defense to such an action; it does not release defendant from the performance of the covenant in his deed, so long as it remains of any value to the plaintiff.

When the owner of the easement created by the covenant has made or permitted permanent erections which substantially intercept the air, light and vision to and from his lot, the easement is thereby extinguished; and so if the erection interferes with the easement to a certain extent, to that extent it is destroyed; the fact that the owner chooses to relinquish part of his easement, does not deprive him of the whole. It devolves upon the defendant in an action upon the covenant to show that the erection, either in whole or in part, destroyed the easement.

In such an action the easement is the subject-matter involved; its value, therefore, is the proper basis for an extra allowance.

(Argued December 9, 1877; decided January 15, 1878.)

APPEAL from judgment of the General Term of the Court of Common Pleas, in and for the city and county of New York, affirming a judgment in favor of plaintiff, entered upon a decision of the Court at Special Term.

This action was brought to restrain defendant from infringing upon an alleged easement.

The facts appear sufficiently in the opinion.

*John Sherwood*, for appellant. An action in equity to maintain or enforce the terms of a covenant by injunction, is analogous to an action to compel a specific performance, and the interference of the court is subject to the same qualifications in both cases. (Story's Eq. Jur., §§ 729, 730.) The plaintiff must show that he has been in no default in not having performed the agreement, and has taken all proper steps toward the performance on his part. (Story's Eq. Jur., §§ 749, 750, 771.) Covenants, like the one in suit, are not now favored, especially where they have the effect to restrict building in great cities that may conduce to the general improvement for business purposes, or the public convenience. (*Parker* v. *Foote*, 19 Wend., 309; 3 Kent's Com. [7th ed.], 549, 550.) A court of equity will not look into the future condition of a building, but will confine itself, in its right of interference, to that which the emergency of the circumstances renders necessary. (*Jackson* v. *Duke of Newcastle*, 33 L. J., 698.) A covenant against a harmless act, or a covenant not to do an act which has ceased to be injurious, will not be enforced in equity. (Goddard on Easements, 261, 262; *Attorney-General* v. *Nichols*, 16 Ves., 338; *Herz* v. *Un. Bk.*, 2 Gif., 686; *Western* v. *MacDermot*, 1 L. R. Eq., 499; 2 L. R. Ch., 72; Story's Eq. Jur., §§ 9, 29; *Robson* v. *Wittingham*, 12 Jur. U. S., 40.) A license to enter the lands for the purpose of building is revocable; and where a license is revocable, no estate passes. (Washb. on R. P., 400 *n.*; *Mumford* v. *Whitney*, 15 Wend., 380; *Babcock* v. *Utter*, 1 Keyes, 397, 404–406; 1 Chitty's Gen. Pr., 339; Brown on Stat. of Frauds, § 29; *Peek* v. *Matthews*, 3 L. R. Eq., 515; 2 Wash. R. E., 341, 342; *Dyer* v. *Sanford*, 9 Metc., 395; *Liggins* v. *Inge*, 7 Bing., 682.) Plaintiff having broken the covenant with Hurry, is estopped from setting up that her rights are paramount, and that the other purchasers must be held in equity to a strict and technical performance of their covenants, when she fails to show that she has suffered injury. (*Corning* v. *Gould*, 16 Wend., 531; *Crain* v. *Fox*, 16 Barb., 164; *Peek* v. *Matthews*, 3 L.

R. Eq., 515; *Roper* v. *Williams*, 1 Tur. & Russ., 22; *Duke of Bedford* v. *British Museum*, 2 Myl. & K., 552.) Plaintiff's act operated as an extinguishment of the easement. (*Corning* v. *Gould*, 16 Wend., 541; *Taylor* v. *Hampton*, 4 McC., 96; *Ballard* v. *Butler*, 30. Me., 99; *Moore* v. *Rawson*, 3 B. & C., 332; 3 Kent's Commentary [3d ed.], 448, 449; *Garrett* v. *Sharp*, 3 Ad. & El., 325; Washburn on Easements [3d ed.], 661–663; *Liggins* v. *Inge*, L. R., 2 Ch. App., 482.) By plaintiff's breaches of her covenant and her acquiescence in the destruction of the scheme by the others, the easement was extinguished. (16 Wend., 541; 2 M. & K., 552; L. R., 3 Eq., 575; 1 T. & R., 22; 1 Story's Eq. Jur. [11th ed.], 836; *Williams* v. *Earl of Jersey*, 1 Cr. & Ph., 91; *Taylor* v. *Hampton*, 4 McC., 96; 3 Kent's Com. [3d ed.], 448, 449; Washb. on Easemts., 607–609; *Parker* v. *Nightingale*, 6 Al., 346; Goddard on Easemts., 252–253; *Renshaw* v. *Bean*, 18 Q. B., 112; *Wood* v. *Cop. M. Co.*, 14 C. B., 428, 446; *Heath* v. *Buchnal*, L. R. Eq., 1; *Topping* v. *Jones*, 11 C. B. [N. S.], 283; *Arnold* v. *Conneman*, 50 Penn., 361: *White's Bk.* v. *Nichols*, 64 N. Y., 74; *Curtis* v. *Ayrault*, 47 id., 73; *Lampmann* v. *Mills*, 21 id., 505; L. R., 8 Eq., 1; Story's Eq., 778; *Olmstead* v. *Loomis*, 6 Barb., 152; *Fisk* v. *Wilber*, 7 id., 395; *Snowden* v. *Noah*, Hopk., 352; *Woodworth* v. *James*, 2 J. Cas., 417.)

*Thos. G. Ritch*, for respondent. The restrictions contained in the deed to defendant were valid. (*Gibert* v. *Peteter*, 38 Barb., 488, 514; 38 N. Y., 165; *Banks* v. *Am. Tract Soc.*, 4 Sand. Ch., 438; *Seymour* v. *McDonald*, id., 502; *Parker* v. *Nightingale*, 6 Al., 341.) The covenant in question, by operation of law and its own expressed terms, runs with the land, and can be enforced by injunction. (*Clark* v. *N. Y. L. Ins. and Tr. Co.*, 64 N. Y., 33; Drewry on Injunctions, 239, 240, 246, 265; Washb. on Easemts., 62, 63, 509; *Trustees of Watertown* v. *Cowen*, 4 Paige, 510; *Hill* v. *Miller*, 4 id., 254; *Brouwer* v. *Jones*, 23 Barb., 153; *Parker* v. *Nightingale*, 6 Al., 341; *Hubbell* v. *Warren*, 8 id., 173.)

Allowing that the covenants running through the deeds of the four Fifth avenue lots, are mutually binding, plaintiff is still entitled to the same relief and judgment. (4 Sand. Ch., 502; 23 Barb., 153; *Barrow* v. *Richard*, 8 Paige, 353; 4 id., 510; 38 Barb., 488, 514; *Tallmadge* v. *E. R. Bk.*, 26 N. Y., 104; *Banks* v. *Am. Tract Soc.*, 4 Sandf. Ch., 438; *Cooke* v. *Chilcott*, L. R., 3 Ch. Div., 694; *Birdsall* v. *Tiernan*, 12 How. Pr., 551; *Kirkpatrick* v. *Peshine*, 9 C. E. Green, 206.) Although the covenant was inserted in the Ludlow deed, it is to be construed in connection with the fact that the bay-window was then erected. (*Perkins* v. *Coddington*, 4 Robt., 647.) Even if there had been a waiver or acquiescence in a breach of the covenant in part, such waiver or acquiescence could not authorize defendant to abolish the covenant, or disregard it in any particular. (1 L. R. Eq., 499; 2 L. R. Ct. App., 72.) If a change has taken place in the character of the neighborhood, it cannot alter the rights of the parties. (*Fulk* v. *Maxhay*, 11 Beav., 571–584.)

EARL, J. William Hurry owned the whole block of land, in the city of New York, bounded on the north by Twenty-seventh street, on the south by Twenty-sixth street, and on the west by Fifth avenue, and extending one hundred feet easterly from said avenue, except one lot on the corner of Twenty-sixth street and the avenue. He had laid out the block into six lots, four of which fronted on the avenue and two on Twenty-sixth street.

In February, 1851, Hurry sold and conveyed to Abel Harker, the lot on the corner of the avenue and Twenty-seventh street, by a deed in which the grantor and grantee joined, and in that deed the grantee for himself, his heirs and assigns, covenanted to, and with the grantor, his heirs, executors and administrators, that neither he nor his heirs or assigns, nor any person claiming under, through, or by means of the conveyance then executed, would at any time thereafter " erect upon said lot any other building than a genteel dwelling-house to cover the whole front of said lot,

but not to a greater depth than fifty feet," which covenant was declared to be a continuing covenant, and to be for the benefit of the owners of lots then owned by Hurry, between said lot and Twenty-sixth street, so that the same might have "freedom of air, light and vision." On the same day Hurry sold and conveyed the lot next adjoining on the south to Ralph Bigelow, by a deed executed by both parties in which Bigelow covenanted as Harker had in his deed, as to the character and extent of the building to be erected thereon, and as to light, air and vision, for the benefit of the remaining lots of Hurry. In April, 1853, Hurry sold and conveyed to Francis E. Siffken the lot next adjoining on the south by a similar deed, which contained the same covenant on the part of the grantee. In April, 1855, Hurry sold and conveyed to the plaintiff the remaining lot on Fifth avenue to the depth of sixty-six feet, and the first lot from the avenue fronting on Twenty-sixth street, thirty-six feet wide and one hundred and twelve feet and ten inches deep, extending to the other lot conveyed. In that deed plaintiff covenanted that neither she nor her heirs or assigns would at any time thereafter erect any building on the Fifth avenue lot except a first-class dwelling-house, not to exceed fifty feet in depth. The deed also in terms conveyed to plaintiff all the easements, rights, covenants, privileges, benefits and advantages belonging or appertaining to the two lots of land, or either of them, or by or to Hurry, his heirs or assigns, as the same were set forth in the prior deeds above mentioned; and in the same deed he constituted and appointed her, her heirs, executors, administrators or assigns his true and lawful attorney and attorneys, to have, use and take all lawful ways and means for her or their benefit to enforce the fulfillment and performance of all the covenants, promises, conditions, restrictions and agreements contained in the prior deeds for the benefit of the lots conveyed to her.

After several mesne conveyances, the Siffken lot came to the defendant by a deed executed in February, 1862, and he has since been the owner thereof. All the mesne convey-

ances, as well as the deed to defendant, contain the same covenants, easements and restrictions as those contained in the deed from Hurry to Siffken.

· On plaintiff's lot fronting upon Twenty-sixth street there was at the time of her purchase a large and valuable house, which she has since occupied as her residence, one of the elements of the value thereof, and one of the inducements to the purchase thereof being the advantage of light, air and vision in the rear to Twenty-seventh street.

A house had been erected on defendant's lot, and prior to the commencement of this action he contemplated and notified the plaintiff that he was about to erect and build in the rear of his house a building or extension of greater depth than fifty feet from the front of his lot; and to restrain him from doing so, this action was commenced. Judgment was given for plaintiff, which defendant seeks to reverse upon several grounds, which must now be considered.

First. I do not think defendant can now say that he did not intend materially to extend his building beyond the fifty feet. He did not place himself upon such a defense in his answer, nor upon the trial. He gave the plaintiff notice that he was about to erect and build in the rear of his house a building or extension of greater depth than fifty feet from the front of his lot. The sole purpose of the notice must have been to enable the plaintiff to test his right before he had incurred expenses in erecting the building or making the extension. He gave the plaintiff notice that he intended to violate the covenant in his deed; and if the violation was to be in such way as to be entirely harmless, it devolved upon him to show it. In a case like this it was enough that he threatened and intended to violate the covenant to authorize the interference of a court of equity. (*Worthy* v. *Warner*, 119 Mass. R., 550; *Western* v. *Macdermott*, 2 Chy. App. [L. R.], 72.)

Second. In 1863 the owner of the Harker lot on the corner of Fifth avenue and Twenty-seventh street, built an extension, in the rear of his house, of brick, fifteen feet high

and fifteen feet deep beyond the line of fifty feet. In the same year plaintiff commenced an action against the owner to compel him to remove this extension. An answer was served in the action in 1864, but the action has never been noticed for trial by either party. It is claimed that because plaintiff has not prosecuted that action to a conclusion, she has lost her right to maintain this. It is a sufficient answer to this claim that plaintiff did not acquiesce in the breach of the covenant in that case. She promptly commenced her action, and why it has not been brought to trial does not appear. But if that breach is a damage to defendant, why has he not sued? The covenant in the Harker deed was as much for the benefit of his lot as plaintiff's, and he had as much right to enforce it as she had. He cannot, therefore, complain of that breach in which he has acquiesced to justify his own. But a still further answer to this claim is this: Plaintiff is not suing for the breach of a covenant given for the common benefit of plaintiff and defendant. She sues the defendant upon a covenant contained in his deed for her exclusive benefit. If all the prior grantees of Hurry should violate their covenants, it would not release defendant from the performance of the covenant contained in his deed, so long as it remained of any value to the plaintiff.

The whole Fifth avenue front has for some years ceased to be occupied for dwelling-houses, and has been occupied mainly for hotel purposes. Plaintiff did not object to the change from dwelling-houses to a hotel, except in the most general way. It may be said that she has acquiesced in the change, and that she cannot now enforce the covenants which require the fronts of the lots to be occupied by genteel dwelling-houses. But such acquiescence does not deprive her of her right to enforce this, an entirely distinct covenant. Notwithstanding the violation of other covenants permitted or acquiesced in, she can enforce this so long as it is of any value to her. (*Western* v. *Macdermott*, 1 Eq. Cas. [Law Repts.], 498; *S. C.*, 2 Chy. App. [Law Repts.], 72.)

The simple fact that since the deeds were given by Hurry,

the streets in the vicinity-of this block have ceased to a large extent to be occupied for genteel dwelling-houses, interposes no obstacle to the relief sought by the plaintiff. If by the change in the surrounding circumstances this covenant had ceased to be of any substantial value to the plaintiff, she would not be permitted in equity to enforce it, simply to annoy and damage other people. But so long as her house is occupied as a dwelling-house, and the locality remains suitable for dwelling-houses, and this covenant remains of substantial value to her, and she has in no way extinguished or released her easement, she must be permitted to enforce it.

Fourth. It is further contended in behalf of the defendant that the plaintiff should have been defeated, because by her own voluntary act she had annihilated or extinguished the easement secured to her by the covenant. The facts upon which this contention is based, are as follows : In 1856, the plaintiff still owned the lot conveyed to her by Hurry, sixty-six feet deep which fronted on Fifth avenue, and in that year she made a verbal contract with one Large to sell and convey the lot to him, and gave him verbal permission to enter thereon for the purpose of building a dwelling-house thereon. Under this verbal contract Large erected upon the lot a first-class dwelling-house fifty feet deep, with an extension of nine feet additional in the rear which was of solid construction with a cellar under it. This dwelling-house was erected while the plaintiff was absent in Europe. She knew nothing of this extension, and did not authorize or at the time consent to its erection. In October, 1856, the plaintiff having returned from Europe, and knowing of the erection of the dwelling-house and of the extension thereto, conveyed the lot, as we must infer, by the request of Large to Julia F. Ludlow by a full covenant deed. That deed was executed by both grantor and grantee, and the grantee covenanted that neither she nor her heirs or assigns, would at any time thereafter erect any building on the lot conveyed, except a first-class dwelling-house not to exceed fifty feet deep, which covenant was declared to be for the

benefit of the lot now owned by the plaintiff, for "freedom of light, air and vision." Until the delivery of that deed, nothing had been paid plaintiff under the verbal agreement with Large. After the erection of this building fifty feet deep, there remained only sixteen feet in depth in the rear of the lot "for light, air and vision," for the benefit of plaintiff's house. The extension is not fully described in the case. All we know of it is that it is an extension of the dwelling-house to the extent of nine feet, and that it is built of solid material with a cellar under it. Its height is not given.

The plaintiff must undoubtedly be held responsible for this extension. She knew it was there, did not object to it or request its removal, and voluntarily gave a full covenant deed conveying the lot as it then was. She must be treated in this action as if she had erected it. If it had been shown that this erection was such as to substantially to intercept the light, air, and' vision from and over the several lots on the north thereof, the plaintiff's easement would thereby have been extinguished forever; and if the erection was such as to have the same effect to the extent of nine feet, the easement to the width of nine feet would have been destroyed. (Domat, 218; 3 Kent. 449; *Dyer* v. *Sanford*, 9 Met., 395; *Ballard* v. *Butler*, 30 Maine, 94; *Duke of Bedford* v. *Trustees of British Museum*, 2 Myl. & K., 552; *Roper* v. *Williams*, 1 Tur. & Russ, 18; *Corning* v. *Gould*, 16 Wend., 531; *Crain* v. *Fox*, 16 Barb., 184.) The plaintiff had the right to place this extension there; whatever its height or character, it could harm no one but herself. The covenant in the deed she took from Hurry that she would not erect any building upon the lot to exceed fifty feet in depth, was not for the benefit of any of the lots to the north of hers, and it could not be enforced by the owners of any of such lots. The only effect of such an extension could be, if of sufficient size, to destroy her easement. But, as to this extension, the defendant had the affirmative. It devolved upon him to show that either, in whole or in part, it destroyed the ease-

ment. This he failed to show. All that appears is that there was an extension of nine feet. It was no part of the main building; it was something in addition to the building. We have no means of knowing or guessing how high it was. The trial court did not find that it materially interfered with the enjoyment of the easement, and we can not say that it did. If it destroyed the whole easement, that should have been shown, and then there would have been a full defense to the action. If it interfered with the easement only to the extent of the nine feet, that should have been shown, and then to that extent the plaintiff could have had no relief. Suppose it was so high as only to interrupt the light, air and vision to and from the lower story of plaintiff's house, that would not authorize the defendant to erect a building upon his lot which would intercept them to a greater extent. The easement belonged exclusively to the plaintiff, and she could impair it to any extent short of the whole without losing what was left, provided it was of substantial value to her. The fact that she chose to give up part of her easement, did not authorize the owners of the several lots to deprive her of the whole.

These observations show that the defendant ought to have proved the character and effect of the extension, that the court could have shaped its decision adjusting the rights of the parties. Such rights should not be disposed of upon mere speculation as to the character of this structure, and a valuable right should not be defeated by proof so imperfect.

I am therefore of opinion that upon the facts, as they appear in this case, the plaintiff was entitled to the relief claimed by her. We cannot interfere with the extra allowance of costs granted at Special Term. The easement was the subject-matter involved in the litigation, and its value was proper as the basis of the allowance.

But the extension to the rear of the house on the Ludlow lot may, within the principles above laid down, have extinguished a portion of the plaintiff's easement, and the judgment below may thus have more extensive operation

than it ought. Therefore, to protect the defendant's rights, the judgment must be so modified as to be without prejudice to the right of the defendant to extend his house in the rear to the same extent and height as the extension on the Ludlow lot, and as thus modified it must be affirmed without costs in this court to either party.

All concur.

Judgment accordingly.