(118 App. Div. 641)

### MITCHELL v. REID.

(Supreme Court, Appellate Division, First Department.   April 5, 1907.)

EASEMENTS—RIGHTS OF LIGHT, AIR, AND VIEW—CONSTRUCTION.

    V. sold to H. a tract of ground in the middle of a block, conveying rights of air, light, and view over lot O, an adjoining tract, bounded laterally by lots A and M, retained by V., and reserving to lots A and M similar easements.   Afterwards V.'s grantee sold to defendant lots A and O and part of lot M, subject to the easements granted and reserved in the conveyance to H., and reserving to the remainder of tract M the rights of light, air, and view reserved in the deed to H.   *Held*, that an easement was reserved, over the portion of lot M conveyed, of light, air, and view, so that that portion could not be used so as to obstruct the easement which had become appurtenant to the remainder of lot M of a use of lot O for light, air, and view.

Appeal from Special Term, New York County.

Action by Edward Mitchell against Elizabeth M. Reid.   From a judgment for plaintiff, defendant appeals.   Affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Henry W. Sackett, for appellant.
John M. Bowers, for respondent.

INGRAHAM, J.   Prior to January 15, 1884, Henry Villard was the owner of a piece of land on the east side of Madison avenue, between Fiftieth and Fifty-First streets, in the city of New York, and with a depth of 175 feet easterly from Madison avenue.   Contemplat-

ing the improvement of this property, he had a map of it made, which was dated May 16, 1883, and was filed in the office of the register of the county of New York on January 15, 1884, and is as follows:

This map shows a plot on the northeast corner of Fiftieth street and Madison avenue, of 60 feet on Madison avenue and 100 feet on Fiftieth street, that was marked "A." Adjoining that on the east was a small strip of land, extending from Fiftieth street, about 5 feet in width and 29 feet 8 inches in depth, marked "P." In the rear of this strip of land there was laid out a plot of 17 feet 9 inches in width and 25 feet in depth, adjoining plot A, the corner plot, on the east, marked "O." To the north of plot O there was a plot of ground 35 feet in width, 101 feet 10 inches in depth, marked "L" on the map. There was also laid out a small piece of land at the intersection of the easterly line of O and southerly line of L, 18 feet 9 inches by 10 feet, marked "N" upon the map, and a plot of land, fronting on Fiftieth

street, 75 feet by 64 feet 8 inches, which was bounded on the west by plots P, O, and N, marked "M." There was also laid out upon the plan a plot of land fronting on Madison avenue, commencing 60 feet north of Fiftieth street, 80 feet 10 inches in width by 73 feet 2 inches in depth, which was to be an open court, not built upon, furnishing an entrance to the houses on the corner of Fiftieth street and Fifty-First street and Madison avenue, and also an entrance to plots L and K on the map; the plan thus indicating certain portions of the property to be covered with buildings and certain other portions to be free of buildings for the benefit of the property adjoining. Some time in 1883 Villard commenced building a house on the corner of Fiftieth street and Madison avenue, now owned by the defendant; and it was nearly completed when A. H. Holmes purchased plot L, upon which Holmes proceeded to build a house, which was completed in May, 1884. The conveyance to Holmes was dated the 27th of December, 1883. This conveyance was made before the filing of the map in question, which was not referred to in the description of the property. The premises were described by metes and bounds, and an analysis of this deed is essential to the determination of the question here presented.

The property conveyed is described as a certain lot, piece, or parcel of land, "being in that certain block of land bounded northerly by Fifty-First street, easterly by Fourth avenue, southerly by Fiftieth street, and westerly by Madison avenue"; the premises conveyed being bounded and described as follows: At a point on the center line of said block distant 73 feet 2 inches eastwardly from the easterly line of Madison avenue; running thence eastwardly along the center line of the said block 101 feet 10 inches; thence southwardly, and parallel with Madison avenue, 35 feet 9 inches; thence westwardly, and parallel with the said center line of said block, 75 feet; thence northwardly, parallel with Madison avenue, 6 feet; thence westwardly, parallel with the center line of the block, 26 feet 10 inches; and thence northwardly, and parallel with Madison avenue, 29 feet 9 inches, to the point or place of beginning. There was thus conveyed a plot of ground in the middle of the block, and with it there was also conveyed "a perpetual right and easement of light, air, prospect, ingress, and egress upon, over, and across all that certain parcel of land adjoining and west of the said premises particularly described by metes and bounds, being the open courtyard marked "B" upon the map, "which said parcel of land last described is to be used in common by the parties hereto and their heirs and assigns, and other owners of land adjoining the same on the northerly, easterly, and southerly sides thereof, as an ornamental courtyard and for no other purpose." There was also granted "a perpetual right and easement of light, air, prospect, ingress, and egress upon, over, and across a certain parcel of land and courtyard adjoining and south of the premises conveyed," which was also described "by metes and bounds, which was plot O upon the map, and also a right of way and passage 5 feet in width and 7 feet in height above the level of the sidewalk in Fiftieth street, from the courtyard last above described, namely, plot P on the map, to the northerly side of Fiftieth street, the westerly line of said right of way being distant 101 feet from and parallel with the easterly line of Madison avenue,

together with the right to have and maintain a vault, coal shute, and sewer pipes beneath the surface of said last-mentioned courtyard and right of way as the same now are in connection with the dwelling house erected upon the premises hereby conveyed." There was also granted "a perpetual easement of light and air over and across plot of land adjoining the courtyard last above described on the easterly side thereof, and adjoining the premises, conveyed and described by metes and bounds, which was plot N upon the map."

Under this grant Holmes entered into possession of the premises conveyed to him, with the various easements over the adjoining plots of land secured to him by this conveyance, and which he still continues to hold, occupy, and enjoy. Villard remained the owner of plots A and M; A being the property upon which he erected his dwelling house, and M being the plot of ground to the east, 75 feet on Fiftieth street by 64 feet 8 inches in depth. Subsequent to the conveyance to Holmes, Villard and wife conveyed to William Endicott, Jr., and Horace White, all this block of land, excepting and reserving therefrom the property conveyed to Holmes, and also the property adjoining Holmes on the north which had been conveyed to Adams, and the easements appurtenant thereto in trust to pay the interest upon mortgages, and the taxes and assessments of the property, to carry out and fulfill the existing contracts for the improvement of all the said premises and for the completion of the buildings now in process of construction and completion, so that all of said premises shall be free and clear of all liens or claims of mechanics or materialmen or otherwise, to satisfy any indebtedness owing by Villard to a railroad company named, and to pay over the rest, residue, and remainder of the said premises to Mrs. Villard, with power to mortgage, lease, or otherwise dispose of or sell, at private or public sale, for cash or otherwise, any part of the said premises.

On the 28th of January, 1884, by an instrument in which Villard and wife were parties of the first part, Endicott and White, as trustees, of the second part, and Holmes, of the third part, which recited the purchase of this tract of land by Villard with a view to the building upon and division of the same in the manner shown upon a map or survey of the same which had been filed in the office of the register of the city and county of New York on the 15th day of January, 1884; that while so seised of the said premises he sold to Holmes in fee simple that portion of the said lands and premises designated in the said map or survey by the letter L, "together with certain easements of light, air, prospect, view, passage, way, ingress, and egress over portions of the premises laid down in said map or survey and thereon designated as parcels B, N, O, and P, as appurtenant to said parcel L"; that "the said deed to the party of the third part fails to grant and convey an undivided share or interest in the parcel of land or courtyard designated on said map or survey by the letter B and the color green, and also fails to grant and convey the easements of way, passage, ingress, and egress over and upon said parcels O and P as sole and exclusive easements, as it was the intent of said parties to said deed should be done, and for the better fulfillment of the understanding and agreement aforesaid, and to correct the errors or omissions aforesaid in said last-mentioned deed or conveyance, * * * have confirmed and here-

by do confirm unto the said party of the third part, and to his heirs and assigns, forever, all and singular the property, premises, rights, and easements granted in and by the aforesaid deed of conveyance to said party of the third part, and in addition thereto have granted, bargained, sold, conveyed, and confirmed, and by these presents do grant, bargain, sell, convey, and confirm, unto the said party of the third part, to his heirs and assigns, forever," the courtyard shown upon the said map by the letter B, and also a "perpetual, full, unrestricted, sole, and exclusive easement and right of way, passage, ingress, and egress over and upon said parcel of land designated on said map or survey by the letter O, and the color Indian ink, and every part and parcel thereof, free from the use, control, and interference of any person or persons whomsoever, but reserving to the owners of parcels A and M on said map or survey, adjoining said parcel O on the easterly and westerly sides thereof, easements of light, air, and prospect from and over the same, as in said deed of conveyance to the party of the third part the same are mentioned or reserved." The party of the third part, Holmes, then covenanted to keep and maintain the inner courtyard, at or near the average level of the sidewalk in Fiftieth street opposite the entrance to the passage or way designated on said map or survey by the letter P, and also a "perpetual, full, sole, and conclusive easement and right of way, passage, ingress, and egress, at the grade of the sidewalk in front thereof 5 feet in width and 7 feet in height above said grade, over, upon, and across said parcel or strip of land, designated on said map or survey by the letter P, to and from Fiftieth street, free from the use, control, or interference of any person or persons whomsoever."

It is important to consider the easements or rights to which these three parcels, N, O, and P, had been subjected by these conveyances. The title still remained in Villard, or Endicott and White, as trustees for Villard; but Holmes had acquired easements appurtenant to the premises acquired by him to which these three parcels of land were subject. It is quite apparent, both from the plan or survey and from the nature of the buildings that had been erected upon these premises and the covenants in these deeds, that it was the intention that neither parcel N nor parcel O should be built upon, with the exception of a building upon N which was not to exceed the first story above the parlor floor of the building erected upon the property acquired by Holmes, and that these two pieces of property should be used as open courtyards for the benefit of Holmes' property and for the two pieces of property retained by the grantors, being plots A and M on the map. Under this second Holmes deed the grantors expressly reserved to the owners of parcels A and M, on the map or survey adjoining parcel O on the easterly and westerly side, easements of light, air, and prospect from and over the same, and Holmes covenanted to keep and maintain said inner court, O, at or near the average level of Fiftieth street. There was thus granted to Holmes easements over plot O and N, and at the same time there was reserved, as appurtenant to plots A and M, the same easements over plot O. These easements thereby became appurtenant to the three pieces of property, A, L, and M. The legal title still remained in the grantors, then vested in Endicott and White as trustees; but that legal title was subject to these easements, one in favor of plot L, one in favor of plot A, and one in favor of plot M.

It is quite evident that these were intended to run with the land as appurtenant to these several plots of land, each of which abutted on plots O and P. So long as plots A and M and the fee of plots N, P, and O remained in the same persons, they could do as they liked with these plots, subject, of course, to the easements conveyed to Holmes as appurtenant to his property.

A dwelling house had been erected on plot A, to which there had been reserved easements over plot O, but no building had been erected on plot M. By a conveyance made on the 9th day of January, 1886, Endicott and White, as trustees under the deed of Villard, as parties of the first part, the Oregon Railway & Navigation Company, the corporation in whose favor the trust existed under such deed of the second part, and Henry Villard, of the third part, conveyed to Fannie Harrison Villard, wife of the said Henry Villard, the property conveyed to the trustees by the deed of 1883, describing these various parcels of land by metes and bounds according to this map or survey, and which included parcels A, M, N, O, and P, subject to the covenants as to nuisances and buildings contained in two certain conveyances specified, with the benefits of and "subject to the conditions of a certain deed, dated the 27th day of December, 1883, executed by Henry Villard and Fannie Harrison Villard, his wife, to Artemas H. Holmes, and recorded, * * * and also with the benefits of and subject to the conditions of a certain deed, bearing date the 28th day of January, 1884, executed by said Henry Villard and others to Artemas H. Holmes and recorded." Fannie Harrison Villard thus having become the owner of plots A, M, N, O, and P, subject to the easements appurtenant to plot L, owned by Holmes, on the 8th day of November, 1886, conveyed to the defendant a plot of land on the northerly side of Fiftieth street, beginning at the corner formed by Fiftieth street and Madison avenue, and extending eastwardly on Fiftieth street 125 feet. This included plot A, part of plot M, one-half of plot N, and the whole of plots O and P, with the following reservation:

"Reserving herefrom to the owners of the remaining portions of the parcel of land designated by the letter 'M' on the certain map of the property of Henry Villard filed in the office of the register of the county of New York January 15, 1884, the reservations contained and mentioned in the deed of said Henry Villard and others to Artemas H. Holmes and recorded in Liber 1770 of Conveyances, page 377, in the office of the register ateresaid, in relation to the parcel of land designated by the letter O on said map"

This conveyance was subject to the several conditions, covenants, easements, restrictions, and obligations contained in the deeds from Villard and wife to Holmes, dated the 27th of December, 1883, so far as the same relates to the courtyard fronting on Madison avenue, and "to the easements, covenants, and privileges therein contained as to the smaller courtyards, N and O, and the passageway, P, as shown on said map," and also to deed made by Villard and wife and others to Artemas H. Holmes, dated January 28, 1884, "so far only as the same relates to the said courtyard fronting on Madison avenue therein, * * * and to the easements, covenants, and privileges therein contained as to the smaller courtyards, N and O, and the passageway, P, as shown on said map." By this conveyance the title to lots A and M was severed. Defendant became the owner of lot A and the westerly

25 feet of lot M; the grantors still retaining the fee of the remaining portion of lot M. There was reserved, however, to the grantor, as the owner of the remaining portion of lot M, as appurtenant to the portion of lot M retained, the reservation contained and mentioned in the deed from Endicott and White, as trustees of Villard, to Holmes, dated the 9th day of January, 1886. As we have seen, what was there reserved to the owners of parcel M was an easement of light, air, and prospect from and over parcel O, as in the first deed to Holmes the same was mentioned or reserved. Now, in the first deed to Holmes there was given a perpetual right and easement of light, air, prospect, ingress, and egress upon, over, and across parcel O. The portion of parcel M conveyed to the defendant was, therefore, subject to the easement reserved to the remaining portion of parcel M—that of light, air, and prospect over parcel O; and that necessarily subjected the portion of parcel M conveyed to the same covenants or easements. What the owner of parcel M reserved was an easement of light, air, and prospect over an interior courtyard laid-out in the middle of this block, upon which Holmes had an easement of light, air, prospect, ingress, and egress, but upon which there had been reserved to parcel M an easement of light, air, and prospect. That easement being appurtenant to the whole of lot M, the owner of lot M conveyed a portion of it, reserving to the remainder the easement that was appurtenant to the whole of lot M, so that it became appurtenant to the balance not conveyed.

It seems to me that this reserved an easement over the portion of lot M conveyed of light, air, and prospect, so that the portion of lot M conveyed could not be used so as to obstruct or interfere in any way with the easement which had become appurtenant to the remainder of lot M of a use of plot O for this purpose. Any other construction of this covenant or reservation would necessarily destroy the effect of the reservation. The owner of lot M had the right to so use the lot as to maintain an open, unobstructed space between lot O and any part of lot M; and when she conveyed a part of lot M, with a covenant that the remainder of the lot should have an easement of light, air, and prospect over lot O, she reserved to herself a right to use the part of lot M conveyed, which became appurtenant to the remainder of lot M, and to which the portion of lot M conveyed became subject. She, therefore, has never conveyed the right to obstruct the portion of lot M that she conveyed in such a way as to prevent the full and free use of the easement that was appurtenant to lot M over lot O. The extent of the reservation or easement over this portion of lot M which was conveyed arises from the deed to the defendant, which reserved to the grantor in that deed the right to subject lot O to the easement that was reserved to lot M in the deed to Holmes, so that the same should become appurtenant to the remainder of lot M that was not conveyed, and thus the portion of lot M that was conveyed became subject to the right to have the portion of lot M conveyed maintained in such a condition and so unobstructed that the portion of lot M reserved could enjoy the benefits of light, air, and prospect over lot O, and this right thus reserved was appurtenant to all of lot M that was

reserved, so that all of lot M reserved could enjoy the easement over lot O.

The hardship insisted upon by the learned counsel for the defendant, that the defendant should be the owner of a lot upon which she is required to pay taxes and yet have no use of the lot, is the result of her accepting a conveyance of the property which reserved these easements as appurtenant to the portion of the property not conveyed. Defendant owns the fee of the lot; but she does not own, and never has owned, the right to obstruct or use this land in such a way as to interfere with the easements reserved by the owner of the remainder of lot M when the conveyance was made. The defendant, as well as the plaintiff, has the benefit of the maintenance of this plot of ground as an open space for the benefit of her property. She also has the right to use it in any way that was not inconsistent with the right that the owners of lot L, and the remainder of lot M reserved; but her title to the lot is subject to the right in the land reserved by its former owner, and which has never been conveyed to her, and which she never has owned, namely, the right to obstruct the land so as to interfere with the easement to which it is subject, which was reserved by its former owner. By the second deed to Holmes there was reserved to the grantor, as the owner of plots A and M, this easement of light, air, and prospect to which plot O is subject. By the deed to the defendant the owner of the portion of plot M conveyed reserved to herself, as the owner of the remaining portion of plot M, a right to this easement over plot O as appurtenant to the remainder of plot M, and thus what was conveyed of plot M was subject to the use by the remainder of plot M of that easement. Thus the title to defendant is subject to this easement, and when Mrs. Villard, who had reserved to herself the right to use this portion of plot M which she had conveyed to the defendant, conveyed to the plaintiff the portion of plot M adjoining the property conveyed to the defendant, she conveyed the property, "together with all the privileges, rights, and easements of light, air, and prospect over the parcel of land to the west of that above described, namely a parcel 25 feet in width on Fiftieth street and in the rear, and 64 feet 8 inches in depth on each side, which the parties of the first part, or either of them, have as owners of that certain lot, piece, or parcel of land hereinbefore firstly described and conveyed, and as owners of all the remaining portion of the parcel designated by the letter 'M' on a map of the property of Henry Villard." The proposed building by the defendant would entirely cut off all possibility of using any easement over lot O which was appurtenant to the plaintiff's premises, and was, I think, a clear violation of this covenant.

The recitals in these various deeds clearly indicate that plots O and N were to be maintained as open courtyards, and the practical construction of the covenants given by all of the parties who have built houses abutting on these parcels clearly show, I think, that it was the intention to constitute plots O and N open courtyards for the benefit of the abutting property. When Mr. Villard built his residence, he had windows opening upon plot O, and his house was constructed in such a way as to indicate that he intended that it should remain an open courtyard. The covenants in the Holmes deeds not only granted to

Holmes an easement in this courtyard, but imposed upon Holmes the obligation to keep and maintain the inner court O at or near the average level of the walk on Fiftieth street opposite the entrance to the passage or way designated on said map or survey by the letter P. The defendant having accepted the conveyance of the part of plot M conveyed to her which reserved to plot M an easement over plot O, she certainly was restricted from doing anything that would interrupt or destroy the easement thus expressly reserved, and to which the land that she had purchased was subject. That easements of this character run with the land and pass by a conveyance is elementary (Hills v. Miller, 3 Paige, 254; Lattimer v. Livermore, 72 N. Y. 174), and the proposed building would thus be a violation of the rights of the plaintiff, for which the plaintiff was entitled to relief.

It follows, therefore, that the judgment appealed from must be affirmed, with costs. All concur.