Crew, C. J.
The plaintiff in error and the defendants in error in this case, each and all of them, derive their title to the property here involved through Barnett T. Scott. The deed of said Bar-' nett T. Scott and wife to Mary I. Kelley under which, through various mesne conveyances, the plaintiff in error, Francis A. Brown, acquired the *200 title to lot three (3) in Barnett T. Scott’s First Addition to the city of Toledo, contains the following covenant: “And the said B. T. Scott hereby covenants and agrees for himself, his heirs, assigns, executors and administrators, that neither he, his heirs or assigns, will at any time erect upon lot 2 of said Scott’s First Addition to the city of Toledo thereon any building nearer than 60 feet to the southwesterly line of Adams .street, and that the only buildings put upon said lot shall be a residence and the necessary attachments and that it shall be used for no other purposes than that of a family residence, and shall cost not less than $5,000 for the residence alone.” The deed of conveyance executed by Barnett T. Scott and wife to Samuel B. Wood for lot number two (2) in said Scott’s Addition to the city of Toledo, which lot, through mesne conveyances, was subsequently acquired, and is now owned, by the defendants in error, contains the express stipulation and agreement that the premises thereby granted and conveyed are to be: “Subject, however, to all the conditions as to location of building, etc., contained in the deed from said Scott to Mary I. Kelley of’ lot 3 in said addition. And said Scott also hereby makes the same agreement for himself, his heirs, assigns, executors and administrators concerning so much of lot 1 as remains in him after this conveyance, as is contained in said last mentioned deed.” The only question presented by the record in this case is, whether, upon the facts found by the circuit court, the plaintiff in error, Frances A. Brown, is entitled in equity to have enforced, for the protection of her property, the restrictive covenants and stipulations contained in the foregoing deeds of conveyance. While *201 counsel for defendants in error concede the general rule-to be, that building restrictions and other limitations on the use of real property of a character which the law permits to be attached to land in such a sense as to restrict the use of one parcel thereof in favor of another, will be enforced by courts of equity upon equitable grounds, in favor of the parcel designed to be benefited and against the parcel burdened by the restriction or limitation; they insist, first, that: “The stipulation or covenant in the deed to Kelley is not such a one as is binding upon the defendants in this case, as it is not a covenant that runs with the land owned by the defendant.”
We shall consider briefly this claim of counsel, although we are of opinion that it is not at all essential to the right of plaintiff to have such restrictive covenant enforced in equity, that the same should be, technically speaking, a covenant running with the land of the defendants. In Village of Ashland v. Greiner et al., 58 Ohio St., 67, where a grant of land was made to be used for religious purposes only, and afterwards the owners of the land conveyed a strip of it to the village of Ashland for the purposes of a street, it is said by Burket, J.: “When value is paid for an estate, such stipulation (a .stipulation that the property granted should be used only for particular purposes) is construed to be a covenant running with the land in the nature of a trust for the uses and purposes expressed in the deed of conveyance, and in case of a breach of the trust a court of equity will, in a proper action, decree the performance of the trust by confining the uses of the estate to the uses and purposes expressed in the deed. In such cases the restricted use of the *202 estate becomes a part of the consideration and is consented to by the grantee and it is no hardship on him and his assigns to be compelled to observe the covenants contained in the deed.” In Stines v. Dorman, 25 Ohio St., 580, it is said by White, J., in the opinion in that case: “It is unnecessary to determine whether the stipulation contained in the deed in question is to be regarded, technically, as a covenant running with the land. However this may be, it has, in equity, the effect of such covenant as against the grantee and his assigns. The stipulation relates to the mode in which the premises conveyed are to be enjoyed, and qualifies the estate. This limitation on the use enters into the consideration of the conveyance; and if not unlawful, it ought, upon plain principles of justice, to be enforced. * * * If the effect of the stipulation is not to accomplish an illegal purpose, it is lawful; and where it affects the -land or the mode of its enjoyment, its effect is to bind all deriving title under the conveyance in which the restriction is found.” In Coughlin v. Barker, 46 Mo. App., 54, Thompson, J., in discussing the character and effect of a restrictive building covenant, says: “The question, whether the covenant runs with the land, seenis to be material in equity only on the question of notice; if the covenant runs with the land, then it binds the owner of the land, whether he had knowledge of it or not; for he takes no greater title than his predecessors had to convey. But, if the covenant does not run with the land, but the land is subject to what is sometimes called an ‘equity/ and at other times a ‘negative easement/ in favor of the adjoining land, then, in order to enforce this easement against the land, it is essential that the owner *203 should have taken the land with- notice of it. Tulk v. Moxhay, 2 Phil. Ch., 774. We understand, then, that it is a principle upon which all the court unite, that the right to equitable relief in these cases depends upon the following considerations: First. A precedent agreement, in some form, by which a restriction is imposed upon the lot owned or held by defendant for the benefit of the lot owned or held by the plaintiff. Second. In case the agreement is made by the defendant's predecessor in title, notice in some form to the defendant of the fact and nature of the agreement, either from the language of the title deed under which he holds, or otherwise.”
In Talk v. Moxhay, 2 Phillips Ch., 775, a leading English case, the syllabus is as follows: “A covenant between vendor and purchaser, on the sale of land, that the purchaser and his assigns shall use or abstain from using the land in a particular way, will be enforced in equity against all subsequent purchasers with notice, independently of the question whether it be one which runs with the land so as to be binding upon subsequent purchasers at law.” In the course of his opinion in this case the Lord Chancellor (Cottenham), observes: “It is said that, the covenant being one which does not run with the land, this court cannot enforce it; but the question is, not whether the covenant runs with the land, but whether a party shall be permitted to use the land in a manner inconsistent with the contract entered into by his vendor, and with notice of which he purchased. Of course, the price would be affected by the covenant, and nothing could be more inequitable than that the original purchaser should be able to sell the property the next day for a greater price, in consideration of the assignee being *204 allowed to escape from the liability which he had himself undertaken.”
We think the rule upon this subject, as clearly established by the authorities is, that when the action is in equity to enforce a restrictive covenant controlling the use or enjoyment of land, the vital question is not whether there is a covenant running with the land, but whether the restriction asserted and relied on, was one imposed upon the servient estate for the benefit of the land in behalf of which it is sought to be enforced. 5 Am. & Eng. Ency. of Law, 11. And we apprehend the rule is the same, whether the restriction imposed is charged upon the land conveyed, or upon land retained by the grantor. Second. It is urged by counsel for defendants in error that: “A fair interpretation and construction of the building restriction, so-called, does not prohibit the improvement of this property as it is .being done, even conceding that the covenant is one that runs with the land.” When we consider that two dwelling-houses have already been constructed by defendants on said lot two (2), and that it is their plan and purpose to construct thereon two more, this claim of counsel, we think, finds sufficient answer and refutation in the plain language of the covenant itself, by which it is provided: “That the only buildings put upon said lot shall be a residence and the necessary attachments, and that it shall be used for no other purpose than that of a family residence, and shall not cost less than $5,000 for the residence alone.”
Obviously, this covenant was one made for the benefit and protection of lot three (3) now owned by plaintiff in error, and as shown by its terms, its purpose was to restrict and limit the use and occu *205 pancy of lot two (2) to purposes of a family residence with the necessary appurtenances, and if given effect at all should be given effect according to its plain and positive provisions. Third. The further contention is here made that the plaintiff, Frances A. Brown, is now without right to enforce said covenant because: “Even though the covenant is one running with the land and therefore binding upon the defendants in favor of the plaintiff, the change in the character of the neighborhood has rendered the enforcement of such a covenant inequitable and oppressive upon the defendants, and would be of no material value to the plaintiff.” This it would seem was the defense chiefly relied on in the court below, and as appears from the opinion of the circuit court was the ground upon which that court denied to plaintiff the relief she asked. In its opinion the circuit court says: “The important question in the case is, whether there has been any substantial change in the drift of the population and character of the property as to its greater availability and value for use in the manner in which it is proposed to be improved by the defendants, or whether the character is not so substantially changed.” And having found, as appears from the above statement of facts (paragraph 6), that since the construction of the improvements of lot 3 (plaintiff’s property), the character of the surrounding neighborhood had greatly changed in the particulars therein designated and pointed out, and having further found, that by reason of such changed condition (paragraph 8) : “The property of the defendants cannot now be profitably utilized in any manner except in the way intended to be used by the defendants and this particular prop *206 erty and property in this neighborhood of lots of such large proportions are adapted to the use to which the defendants are putting it and cannot be profitably used in any other manner owing to the great depth of the lots and the requirements of property generally in that neighborhood at the present time.” The court held that therefore the defendants were absolved from the duty and obligation of longer observing and keeping said covenant and refused to enforce it against them; predicating such judgment it would seem, largely if not wholly, upon a consideration of the injury and damage, by loss of profits, that would result to defendants from its enforcement. It is important to note in the present case that the covenant which plaintiff is seeking to enforce is one made for the exclusive benefit of the property now owned and occupied by her as a residence, and therefore one which a court of equity will require to be specifically performed so long as said covenant remains of substantial value to her. The rule upon this subject, generally adopted and followed by the courts of this country, is, we think, correctly stated in Kerr on Injunctions (2 ed.), page 356: “If the right at law under the covenant is clearly established and the breach is clear, and the covenant is of such a nature that it can, consistently with the rules and principles of the court, be specifically enforced, the court will not, unless under very exceptional circumstances, take into consideration at the hearing the comparative injury to the parties from granting or-withholding the injunction. There may be cases in which it is clear that the damage to arise from the breach would be -inappreciable, and in which the court would refuse to interfere. But the case must be free *207 from all possibility of doubt. It must be clear that there is no appreciable or at all events no substantial-damage before the court will refuse, upon the ground of smallness of damage, to withhold its hand from enforcing the execution. The mere fact that there has been a breach of covenant is a sufficient ground for the interference of the court by injunction. A covenantee has the right to have the actual enjoyment of property modo et forma as stipulated for by him. It is no answer to say that the act complained of will inflict no injury on the plaintiff, or will be even beneficial to him. It is for the plaintiff to judge whether the agreement shall be preserved as far as he is concerned, or whether he shall permit it to be violated. It is not necessary that he should show that any damage has been done. It being established that the acts of the defendant are a violation of the contract entered into by him, the court will protect the plaintiff in the enjoyment of the right which he has purchased.”
In the case at bar there is no express finding by the circuit court, that the contemplated improvement of defendant’s property will not appreciably injure or damage the property of plaintiff, by impairing or diminishing the use and enjoyment of the same for residence purposes, and as a home, thereby greatly depreciating its value. In its opinion the circuit court says: “The plaintiff may or may not have been damaged. The lot of the plaintiff may be more or less valuable by reason of the construction of these buildings by the Hubers; but there would seem to be no greater difficulty, if the plaintiff has been damaged by the depreciation of his property, in ascertaining the amount of such damage by an action, than there is in very many *208 cases where damages are sought and where verdicts are rendered, therefor, although the opinions of witnesses may differ as to the exact extent of such damages. I am not holding or indicating that the plaintiff has been damaged in any substantial way, or has not.” In Lattimer v. Livermore, 72 N. Y., 174, which was an action to restrain defendant from infringing upon 'an alleged easement, Earl, J., says: “The simple fact that since the deeds were given by Hurry, the streets in the vicinity of this block have ceased to a large extent to be occupied for genteel dwelling-houses, interposes no obstacle to the relief sought by the plaintiff. If by the change in the surrounding circumstances this covenant had ceased to be of any substantial value to the plaintiff, she would not be permitted in equity to enforce it, simply to annoy and damage other people. But so long as her house is occupied as a dwelling-house, and -the locality remains suitable for dwelling-houses, and this covenant remains of substantial value to her, and she has in no way extinguished or released her easement, she must be permitted to enforce it.” In Landell v. Hamilton, 175 Pa. St., 336, 337, Mr. Justice Dean, in discussing the binding obligation of a restrictive building covenant similar to the one here in question, .says: “As long •as such restrictions are not unlawful, it is to no purpose to argue that they seriously retard the improvement of the city. We can no more strike down by decree a lawful restriction creating an easement, than we can compel the lot owner to erect buildings in accord with the best style of architecture. Contracts such as this, whether construed as covenants or conditions, since Spencer’s case, have been enforced, both at law and in equity, be *209 tween the immediate parties to them and their grantees, near and remote. * * • * We concede, some of the cases decided in other states are in apparent conflict with our decision. But what this court has uniformly held, and now holds, is, that where the restriction, notwithstanding the change of use of the land and buildings, still is of substantial value to the dominant lot, equity will restrain its violation, if relief, as here, is promptly sought.” Peck v. Conway, 119 Mass., 546; Coudert v. Sayre, 46 N. J. Eq., 386; McGuire v. Caskey, 62 Ohio St., 419; Trustees v. Lynch, 70 N. Y., 440; 5 Pomeroy’s Eq. Jur., Section 281; 2 High on Injunctions, Section 1158.
The English rule would seem to be, that in cases of the character of the one at bar, relief by injunction will be denied only on the ground of equitable estoppel. In Craig v. Greer, 1 Irish Reports (1899), page 278, the Vice Chancellor, after reviewing many English cases, says: “The principle to be deduced from these authorities seems to me to be that in order to defeat the right of a person with whom a covenant has been entered into restricting the mode of user of lands sold or demised, it must be clearly established that there is a personal equity against him arising from his acts or conduct in sanctioning or knowingly permitting such a change in the character of the neighborhood as to render it unjust in him to seek to enforce his covenant by injunction: a change resulting from causes independent of him will not have such an operation.” The Court of Appeal, affirming the decision of the Vice Chancellor, held: ' “That the right of a person to enforce a restrictive covenant by injunction, could not be defeated by mere change in the char *210 acter of the neighbourhood, unless there was an equity against him arising from his acts or conduct . in sanctioning or knowingly permitting such change as to render it unjust for him to seek relief by injunction.”
We have examined the several cases cited and relied on by counsel for defendants in error, and find that in many, in fact, in nearly all of them, the decision was governed by certain controlling facts which clearly distinguish them from the case at bar. Without reviewing in detail, or discussing at length, the finding of facts made by the circuit court, which is set out in full in the statement of this case, we think it enough to say, that in the light of the foregoing authorities the facts found do not in^our judgment, show that there has been such a radical change in the character of the neighborhood in which the plaintiff’s property is situated as can be held destructive of the covenant relied on, or such as would render its enforcement oppressive and inequitable. That the neighborhood continues to be a locality suitable for and devoted to residence purposes, affirmatively appears through the fact found by the circuit court, that defendants have recently erected on lot 2, two residence properties “of modern design and modern construction, each costing more than five thousand dollars,” and they are now threatening to construct thereon two more dwellings of like character neither of which is to .cost less than that sum. Before the defendants commenced to improve their property — lot 2 — they had actual notice of the terms of the building restriction imposed on.said lot, and they were advised that the same would be insisted upon and enforced by the plaintiff. Under these circumstances, it be *211 ing established that the acts of defendants would be in clear violation of the covenant and the restriction thereby imposed, a court of equity will not deny to plaintiff the relief she asks merely because the property of defendants can now be profitably utilized only in the manner contemplated by the proposed improvement. The judgment of the circuit court will be reversed, and upon the facts found judgment will be entered in favor of the plaintiff in error, Frances A. Brown, according to the prayer of her petition.

Reversed.

Summers, Spear, Davis, Si-iauck and Price, JJ-, concur.